José Robles Martínez et al., demandantes y recurridos, *v.* José L. Izquierdo et al., demandados y recurrentes.

*Número:* RE-90-707        *Resuelto:* 21 de junio de 1994

*F. Castro Amy*, abogado de la parte recurrente; *Arsenio López Muñíz, Humberto Mercado Montenegro*, abogados de la parte recurrida.

## SENTENCIA

Examinados los planteamientos de las partes y demás constancias, se dicta sentencia modificando la emitida por el Tribunal Superior, Sala de Guayama, de 7 de noviembre de 1990, a los únicos efectos de eliminar los honorarios de abogado impuestos, y así modificada, se confirma.

Se devuelven los autos originales al foro de instancia para que continúen los procedimientos.

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió una opinión concurrente y disidente. El Juez Asociado Señor Rebollo López emitió una opinión concurrente, a la cual se unió el Juez Asociado Señor Alonso Alonso. El Juez Asociado Señor Hernández Denton emitió una opinión concurrente, a la cual se unió el Juez Presidente Señor Andréu García. La Juez Asociada Señora Naveira de Rodón emitió una opinión concurrente, a la cual se unió el Juez Asociado Señor Fuster Berlingeri.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

## — O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López, a la cual se une el Juez Asociado Señor Alonso Alonso.

*Concurrimos* con la Sentencia dictada en el día de hoy por este Tribunal la cual confirma la emitida por el Tribu-

nal Superior de Puerto Rico, Sala de Guayama, que dejó sin efecto la institución de herederos del testamento otorgado por la Sra. Eduviges Jordán Granel por preterición de heredero forzoso. Somos del criterio que *por imperativo, o mandato, constitucional* un hijo adoptado, *cuyos padres hayan fallecido con posterioridad al advenimiento de la Constitución del Estado Libre Asociado de Puerto Rico en el año 1952*, es a todos los fines legales un *heredero forzoso* de sus padres adoptivos *independientemente* de la fecha en que éste fue adoptado *e independientemente* del hecho de que existan, o no, otros herederos forzosos; ello por la sencilla razón de que una vez entró en vigor nuestra Constitución *todos* los hijos son iguales ante la ley y, por ende, tienen los mismos derechos respecto al caudal relicto de sus padres. *Ocasio v. Díaz*, 88 D.P.R. 676 (1963).

*En consecuencia*, los hijos del adoptado *igualmente* tienen derecho, por mandato constitucional, a heredar de sus abuelos, o padres adoptivos de su progenitor, en sustitución de su padre o madre fallecida,[1] no obstante el hecho de que puedan existir, o no, otros herederos forzosos. *Dicho de otra forma, y de manera más sencilla*, la Constitución del Estado Libre Asociado de Puerto Rico convirtió en inoficiosa, o inexistente, la disposición del Art. 138 del Código Civil, 31 L.P.R.A. sec. 539, que requería que el hijo adoptado antes de la reforma llevada a cabo, y sus padres adoptivos, acudieran ante el Tribunal Superior en solicitud de que la adopción realizada le confiriera al adoptado todos los derechos de hijo biológico;[2] *la validez de cuya disposi-*

---

[1] Art. 896 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2644, el cual establece que:

"Los nietos y demás descendientes heredarán *por derecho de representación,* y si alguno hubiese fallecido dejando varios herederos, la porción que le corresponda se dividirá entre éstos por partes iguales." (Énfasis suplido.)

[2] El citado Art. 138 (31 L.P.R.A. sec. 539) establece que:

"Las adopciones celebradas bajo la legislación anterior se regirán por dicha legislación y surtirán todos sus efectos según la misma, sin limitación de ningún género; *Disponiéndose, que las partes que intervinieron originalmente en una adopción verificada con anterioridad a la vigencia de Ley, podrán recurrir al Tribunal Superior mediante petición a los efectos de que la adopción ya celebrada se rija por*

*ción legal inexplicablemente hoy ratifican las demás Opiniones concurrentes emitidas en el presente caso.*

## I

Elba Iris Vázquez Ramírez fue adoptada, *mediante resolución judicial a esos efectos de fecha 23 de julio de 1943,* por el matrimonio compuesto por Joaquín Jiménez Matute y Eduviges Jordán Granel. Para esa fecha, nuestro ordenamiento jurídico *disponía,* en lo pertinente, que: (1) la adopción realizada *no perjudicaría los derechos hereditarios de los herederos forzosos,* los cuales derechos subsistirían como si la adopción no hubiera sido realizada, Art. 132 del Código Civil de Puerto Rico de 1930;[3] y (2) que el adoptado tendría en la familia del adoptante los derechos y deberes de un hijo legítimo, "con la excepción establecida en el artículo anterior". Art. 133 del Código Civil de Puerto Rico de 1930.[4]

Esta anómala situación jurídica subsistió hasta el año 1947, año en que la Legislatura aprobó la Ley Núm. 353 de 13 de mayo de dicho año. Mediante la misma se eliminó del citado Art. 132 del Código Civil la terminología referente a que la adopción "no perjudicará en ningún caso los derechos que corresponden a los herederos forzosos". Ello, naturalmente, tuvo el efecto de equiparar, desde el punto de vista sucesoral, al hijo adoptado con el hijo biológico. *Feliciano Suárez, Ex parte,* 117 D.P.R. 402 (1986).

---

*las disposiciones de esta Ley.* El tribunal podrá aprobar la petición para que ésta surta efecto y tenga validez." (Énfasis suplido.)

[3] El citado Art. 132 *disponía:*

"... La adopción no perjudicará en ningún caso los derechos que correspondan a los herederos forzosos, y que subsistirán como si la adopción no se hubiese verificado." Código Civil de 1930.

[4] El referido Art. 133 *establecía:*

"... El adoptado tendrá en la familia del adoptante los derechos y deberes y la consideración de un hijo legítimo, con la excepción establecida en el artículo anterior." Código Civil de 1930.

Seis (6) años más tarde, la Asamblea Legislativa aprobó la Ley Núm. 86 de 15 de junio de 1953 (31 L.P.R.A. secs. 531–539), legislación mediante la cual se equiparó *totalmente* al hijo adoptado con los hijos biológicos habidos entre dos (2) personas; estableciendo dicha legislación la forma y manera en que leen hoy día los antes citados Arts. 132 y 133 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 533 y 534.[5]

Ello no obstante, la Asamblea Legislativa de Puerto Rico incomprensiblemente "dejó en vigor" la diferencia existente, *desde un punto de vista sucesoral*, entre aquellas personas que fueron adoptadas *antes* de la vigencia de la Ley Núm. 353 de 13 de mayo de 1947 (31 L.P.R.A. secs. 533–534, 537 y 539n.) y los que fueron adoptados *con posterioridad* a la vigencia del referido estatuto. Estos últimos, conforme la Legislatura, tenían todos los derechos sucesorales de un hijo biológico. Los primeros —esto es, los adoptados *antes* de la vigencia de la Ley Núm. 353, ante— no. Para poder tener igualdad de derechos, dichos adoptados, en unión a los padres adoptantes, venían obligados— conforme establece el *vigente* Art. 138 del Código Civil, ante—[6] a comparecer ante el Tribunal Superior en solicitud de que "la adopción ya celebrada se rija por las disposiciones de" la referida Ley Núm. 86, ante, de 1953.

En el día de hoy no podemos, como hacen las demás Opiniones concurrentes emitidas, ratificar la vigencia y validez de dicha disposición estatutaria. *No estamos de acuerdo.*

---

[5] Los vigentes Arts. 132 y 133 del Código Civil establecen:

Artículo 132—"El adoptado será considerado para todos los efectos legales como un hijo legítimo del adoptante. El adoptante será considerado como el padre legítimo del adoptado". 31 L.P.R.A. sec. 533.

Artículo 133—"Con [la] adopción cesarán todos los derechos, deberes y obligaciones del adoptado en su familia natural o biológica y los de ésta con el adoptado". 31 L.P.R.A. sec. 534.

[6] Véase escolio Núm. 2.

## II

Como hemos podido notar, desde la incorporación a nuestro ordenamiento jurídico de las disposiciones estatutarias originales relativas a la adopción, el adoptado tenía en la familia del adoptante "los *derechos* y deberes y la consideración de un *hijo legítimo* ...". (Énfasis suplido.) Art. 733 del Código Civil de 1930. Esto es, el hijo adoptado —aun antes de 1947— gozaba del *status* de hijo legítimo. Véase *Valladares de Sabater v. Rivera Lazú*, 89 D.P.R. 254 (1963).

Ello no obstante, el legislador le negó al hijo adoptado, hasta el año 1947, el derecho a reclamar su justa y equitativa participación en la herencia de sus padres adoptivos cuando existían, o concurrían a la misma, otros herederos forzosos. Aun después de así equipararlo, mediante la citada Ley Núm. 353 de 1947, el legislador siguió discriminando contra estos hijos, exigiendo que para que éstos, adoptados antes de 1947, pudieran tener derecho, como un heredero forzoso más, a participar en la herencia de sus padres adoptivos, tanto el adoptado como los adoptantes así tenían que solicitarlo del Tribunal Superior. *Dicha disposición estatutaria en nuestra opinión, una vez entró en vigor nuestra Constitución, cesó de existir jurídicamente.*

Como expresáramos en *Almodóvar v. Méndez Román*, 125 D.P.R. 218, 229 (1990):([7])

> Hace más de dos décadas —mediante la decisión que emitiéramos en *Ocasio v. Díaz*, 88 D.P.R. 676 (1963)— sostuvimos el derecho de *todos* los hijos a la *absoluta igualdad de trato jurídico* a base de los *postulados de igualdad y dignidad del ser humano* dimanantes de nuestra Constitución y de las disposiciones de la Ley Núm. 17 de 20 de agosto de 1952 (31 L.P.R.A. sec. 441). Al así hacerlo, expresamos *que carece "de validez toda disposición estatutaria y toda sentencia, decreto o fallo judicial que, en contravención con la letra de la Ley Número 17, únicamente le conceda, reconozca o atribuya al estado de hijo de un*

---

([7]) 90 J.T.S. 11.

*ser humano nada más que parte de los derechos unitarios de que disfruta el hijo llamado legítimo".* (Cita omitida, énfasis suplido y en el original.)

*Y es que no puede ser de otra forma.* La filiación, *bien sea natural o por adopción,* origina una *serie de derechos y obligaciones* entre los miembros de la familia. La misma da seguridad y publicidad al estado civil de la persona y como tal caracteriza *su capacidad de obrar y el ámbito propio de su poder y responsabilidad.* Véase E. Serna Meroño, *La reforma de la filiación,* Madrid, Ed. Montecorvo, 1985, pág. 25 esc. 1.

Ciertamente la Constitución de Puerto Rico proclama el *principio de igualdad* de los hombres ante la ley. Cónsonas con este mandato constitucional, las leyes pertinentes a la materia ante nuestra consideración tienen que promover la igualdad de trato jurídico para todos los hijos con "respecto a sus padres y a los bienes relictos por éstos ...". Véase Ley Núm. 17 de 20 de agosto de 1952 (31 L.P.R.A. sec. 441).[8]

Debe mantenerse presente que en la filiación la equiparación se produce *en cuanto a los efectos del estado de hijo.* Luego del advenimiento de la Constitución de Puerto Rico, nuestro ordenamiento —por imperativo constitucional— le atribuye los *mismos* derechos, facultades, obligaciones, deberes, incompatibilidades y prohibiciones, dentro de la familia, a *todo* hijo; sea éste biológico o por adopción.

En fin, una vez se ha adquirido *el estado o condición de hijo* —en el presente caso, por la vía de la adopción— por mandato expreso de nuestra Constitución ningún hijo puede injustificadamente ser víctima de discrimen y todos están en igualdad de derechos respecto de sus padres y del caudal relicto de éstos; *siendo la ley vigente a la fecha de la muerte del causante* —en este caso, el 3 de febrero de 1985,

---

[8] Establece la referida Ley Núm. 17 de 20 de agosto de 1952 que: "Todos los hijos tienen respecto a sus padres y a los bienes relictos por éstos, los mismos derechos que corresponden a los hijos legítimos." 31 L.P.R.A. sec. 441.

fecha en que falleció la madre adoptante— *la que determina los derechos sucesorios.* Véanse: *Ocasio v. Díaz,* ante; *Martínez v. Vda. de Martínez,* 88 D.P.R. 443 (1963); *Cortés Córdova v. Cortés Rosario,* 86 D.P.R. 117 (1962).

## III

En el presente caso, la adopción se llevó a cabo el 23 de julio de 1943. La hija adoptada pre murió a la madre adoptante, quien falleció el 3 de febrero de 1985. Habiendo la causante fallecido con posterioridad a la vigencia de la Constitución de Puerto Rico, los derechos sucesorales de *todos* los hijos de la misma se rigen por la legislación vigente a la fecha de la muerte de dicha causante. *Martínez v. Vda. de Martínez,* ante; *Cortés Córdova v. Cortés Rosario,* ante.

Para esa fecha, nuestro ordenamiento no sólo prohibía el discrimen entre hijos sino que expresamente disponía la igualdad de derechos de éstos respecto a los bienes relictos por sus padres. 31 L.P.R.A. sec. 441. En otras palabras, de haber estado viva la hija adoptada para la fecha de la muerte de su madre adoptiva, dicha hija adoptada tenía exactamente los mismos derechos sucesorales que un hijo biológico; esto es, era, *por mandato constitucional,* una "heredera forzosa" de su madre adoptiva, no teniendo relevancia o importancia alguna el hecho de que existieran otros herederos forzosos como tampoco el hecho de que no se hubiera cumplido con el requerimiento de "petición de igualdad" exigido por el Art. 138 del Código Civil de Puerto Rico, ante.

Habiendo dicha hija adoptada fallecido con anterioridad a la fecha de la muerte de su madre adoptiva, los hijos de la primera advinieron a ser "herederos forzosos" de la madre adoptiva de su progenitora en "representación" de ésta, Art. 896 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2644, con derecho a participar en la herencia de la

adoptante. Véase *Ex parte Smith et al.*, 14 D.P.R. 664 (1908). *Ello, independientemente del hecho de que hubieran existido otros herederos forzosos de la madre adoptante.*

Por las razones antes expresadas es que *concurrimos* con la Sentencia emitida por el Tribunal en el presente caso.

— O —

Opinión concurrente emitida por la Juez Asociada Señora Naveira de Rodón, a la cual se une el Juez Asociado Señor Fuster Berlingeri.

I

La Sra. Eduviges Jordán Granel y su marido Joaquín Jiménez Matute adoptaron a Elba Iris Vázquez Ramírez por medio de escritura pública aprobada mediante resolución del Tribunal de Distrito de 23 de julio de 1943.

La adoptada falleció el 19 de abril de 1975, habiendo procreado once (11) hijos.[1]

El 3 de febrero de 1985 la señora Jordán Granel, madre adoptiva de Elba Iris, y para entonces viuda del señor Jiménez Matute, falleció dejando testamento abierto en el cual no instituyó como herederos a ninguno de los hijos de su hija adoptiva. De hecho, ninguno de los herederos instituidos en el testamento es heredero forzoso.[2]

---

[1] Estos son: Juan Alberto, Gilberto, Elba Iris, Carmen Angélica, David, José Enrique, Luis Raúl, Fernandito Luis, Carlos Agustín, Michael Angelo —todos de apellidos Robles Vázquez— y Humberto Joaquín Cano Vázquez.

[2] Las personas instituidas herederos son las siguientes: José L. Izquierdo, Héctor Jiménez Juncos y Joaquín Jiménez Gómez. Se instituyeron como legatarios las personas siguientes: Aida Jiménez Jordán, Irma Jiménez Jordán, Roberto Antonio Jiménez Vázquez, Abel Rivera, Teresa Rivera Maldonado, Antonio Trías Jordán, Herminia Jordán Graner, Fernando Luis López, Santiago Jordán, Rosa María Trías Jordán, Osvaldo Santiago Visil, Virginia Jordán de Vázquez, Parroquia de la Asunción de la Iglesia Católica de Cayey, Asilo Municipal de Ancianos de Cayey, Liga Puertorriqueña contra el Cáncer y Lidia Figueroa.

Así las cosas, el esposo de la adoptada José Robles Martínez y su hijo, Juan Alberto Robles Vázquez, presentaron demanda sobre impugnación de testamento alegando preterición de heredero forzoso en el testamento otorgado por la señora Jordán Granel.

Ante esto, dos (2) de los codemandados, Héctor Jiménez Juncos,[3] hijastro de dicha causante y, el hijo de éste, Joaquín Jiménez Gómez, presentaron moción de sentencia sumaria alegando, en síntesis, que la escritura de adopción era nula y que los demandantes no eran herederos forzosos de la testadora.

Luego de varios incidentes procesales,[4] el tribunal de instancia declaró con lugar la demanda anulando la institución de herederos e indicando que prevalecerían las mandas y legados que no fuesen inoficiosos.[5]

Inconforme con tal decisión, recurre la parte demandada señalando los errores siguientes:

1–El tribunal sentenciador erró al resolver que los demandantes como hijos de una persona adoptada son herederos forzosos de la adoptante y que la institución de herederos en el testamento de ésta es nulo por preterición de los hijos de la adoptada en el testamento.

2–El tribunal sentenciador erró al resolver que no era necesario la firma de tres testigos instrumentales en la escritura de adopción para que ésta fuere válida como disposición *causa mortis*.

3–El tribunal sentenciador erró al imponer honorarios de abogado a los demandados-recurrentes.

---

[3] Este fue nombrado administrador judicial de la herencia, mediante Resolución y orden del Tribunal Superior de Caguas de 26 de noviembre de 1986.

[4] Se había dictado sentencia sumaria declarando con lugar la demanda, la cual fue motivo de una petición de revisión ante este Tribunal. Esta fue revocada mediante Sentencia de 28 de junio de 1989, debido a que existía una controversia de hecho relacionada con una de las firmas contenidas en la escritura de adopción. El caso fue devuelto y la firma autenticada a satisfacción del tribunal de instancia.

[5] También se ordenó al codemandado Héctor Jiménez Juncos, administrador judicial, que rindiera un informe de ingresos, gastos, activos y pasivos relacionados con el caudal relicto de la causante Jordán Granel, y que entregara dichos bienes a los legítimos herederos de ésta dentro de un plazo de veinte (20) días. Además, se le impuso a los codemandados Jiménez Juncos y Jiménez Gómez la obligación de pagar solidariamente las costas y honorarios de abogado.

Decidimos revisar y expedimos el auto.

## II

En Puerto Rico, las disposiciones sustantivas que regulan la adopción están contenidas en los Arts. 130–138 del Código Civil, 31 L.P.R.A. secs. 531–539. Conforme al Art. 132 (31 L.P.R.A. sec. 533), el adoptado será considerado para todos los efectos legales como un hijo legítimo del adoptante y éste como padre legítimo del adoptado. Le corresponden, por lo tanto, todos los derechos que reconoce nuestro ordenamiento al hijo legítimo; estos son: a llevar los apellidos del padre y la madre, a recibir alimentos y a la herencia legítima. Art. 118 del Código Civil, 31 L.P.R.A. sec. 466. Por su parte, el Art. 133 (31 L.P.R.A. sec. 534) establece que con la adopción cesarán todos los derechos, los deberes y las obligaciones del adoptado en su familia natural o biológica y los de ésta con el adoptado. De lo anterior surge que en la actualidad, y como norma general, una vez se formaliza la adopción, conforme a la ley, ésta desarraiga al adoptado de todo vínculo de parentesco y de todo derecho respecto a su familia biológica, ya sean paterno-filiales o de carácter sucesoral, con el efecto de borrar su anterior filiación como si el adoptado hubiese nacido del adoptante, *M.J.C.A., menor v. J.L.E.M., menor*, 124 D.P.R. 910 (1989), creándose, por ficción jurídica, relaciones análogas a las de la filiación legítima. *Ex parte Warren*, 92 D.P.R. 299, 302 (1965).

Pero esto no fue siempre así. Para la fecha en que fue adoptada Elba Iris, nuestro Código Civil contenía las siguientes disposiciones relativas a los derechos hereditarios del hijo adoptivo:

> Artículo 132.—La adopción no perjudicará en ningún caso los derechos que correspondan a los herederos forzosos, y que subsistirán como si la adopción no se hubiese verificado.
> Artículo 133.—El adoptado tendrá en la familia del adoptante los derechos y deberes y la consideración de un hijo legí-

timo, con la excepción establecida en el artículo anterior. Código Civil de 1930.

Estos artículos provienen del Art. 214 del Código Civil de Luisiana de 1870.[6] Al adoptarse el Código Civil de 1902 se derogó expresamente el Art. 177 del Código Civil español que aquí regía. Bajo el mencionado artículo, el derecho a heredar del hijo adoptivo dependía de la obligación que hubiese asumido el adoptante de instituirle heredero. Se trataba, pues, de una especie de pacto sucesorio o sucesión contractual.[7] *Valladares de Sabater v. Rivera Lazú*, 89 D.P.R. 254, 258 (1963). La adopción fue una de las pocas materias en que no se siguió estrictamente el Código Civil español, especialmente en cuanto se refiere a los derechos hereditarios de los hijos adoptivos. Así, los Arts. 202 y 203 del Código Civil de 1902 (Arts. 132 y 133 del Código Civil revisado de 1930), no tienen precedentes en el Código Civil español. La sustitución del Art. 177, *supra*, por las disposiciones del Código Civil de Luisiana —que dan al adoptado los derechos de un hijo legítimo, sin perjuicio de los derechos de los herederos forzosos— demuestra la clara intención legislativa de abandonar el principio expresado en el código español y abrazar el principio tan típico de la adopción de que el adoptado adquiera derechos en la herencia. *Sosa v. Sosa*, 66 D.P.R. 606, 610 (1946). Esta le-

---

[6] En la parte pertinente, el Art. 214 del Código Civil de Luisiana de 1870, 1 *Dart's L.C.C.A.*, pág. 131 (1932), disponía como sigue:

"Any person may adopt another child, except those illegitimate children whom the law prohibits him from acknowledging; but such adoption shall not interfere with the right of forced heirs.

"The person adopted shall have all the rights of a legitimate child in the state of the person adopting him except as above stated."

[7] El Art. 177 del Código Civil español disponía:

"El adoptante no adquiere derecho alguno a heredar al adoptado. El adoptado tampoco lo adquiere a heredar, fuera de testamento, al adoptante, a menos que en la escritura de adopción se haya éste obligado a instituirle heredero. Esta obligación no surtirá efecto alguno cuando el adoptado muera antes que el adoptante. El adoptado conserva los derechos que le corresponden en su familia natural, a excepción de los relativos a la patria potestad."

Este artículo fue derogado. Véase *Legislación Civil Vigente*, Valladolid, Ed. Lex Nova, 1990, Vol. I, págs. CC250–CC255.

gislación constituyó el primer intento de liberalizar la institución de la adopción en nuestro país para que el hijo adoptivo heredara de los adoptantes. *Feliciano Suárez, Ex parte*, 117 D.P.R. 402, 410 (1986).

Es importante señalar que el precepto del Código Civil de Luisiana fue modificado ya que se empleó el concepto "familia" en vez del de *estate* que éste contenía. Sobre el particular comenta Luis Muñoz Morales:

> No podemos suponer que los redactores y traductores del Cód. de 1902 dejaran de notar la apreciable diferencia que entre ambos conceptos existe; pues mientras el concepto *estate* se refiere a la parte material, o sea a los bienes, propiedades, patrimonio, herencia, etc.; el concepto "Family" se refiere a la parte personal o sea al linaje, geneología o *relación de parentezco* entre los individuos. (Énfasis suplido.) L. Muñoz Morales, *Anotaciones al Código Civil de Puerto Rico*, X Rev. Jur. U.P.R. 411, 415–416 (1941).

Sin embargo, a pesar de la intención legislativa de mejorar los derechos de los hijos adoptados, hubo muchas dificultades en la interpretación de estos artículos.[8] Por eso, en el segundo caso de *Sosa v. Sosa*, supra, el Juez Asociado Señor Todd Jr., en su opinión disidente, solicitó a la Asamblea Legislativa que enmendara los artículos pertinentes para fijar con claridad los derechos de los hijos adoptivos. La Asamblea respondió con la aprobación de la Ley Núm. 353 de 13 de mayo de 1947, Leyes de Puerto Rico, pág. 681, mediante la cual se enmendó el Art. 132 para que leyera "[e]l adoptado tendrá en la familia del adoptante los derechos y deberes y la consideración de un hijo legítimo", eliminándose la reserva de no perjudicar los derechos de los

---

(8) Véanse: *Ex parte Ortiz y Lluberas*, 42 D.P.R. 350 (1931); *Bardeguez v. Bardeguez*, 48 D.P.R. 713 (1935); *Sosa v. Sosa*, 64 D.P.R. 769 (1945); *Lugo, Ex parte; Ortiz, etc., Opositoras*, 64 D.P.R. 868 (1945); *Sosa v. Sosa*, 66 D.P.R. 606 (1946); *Ginés v. Ayala Rodríguez*, 84 D.P.R. 245 (1961); *Valladares de Sabater v. Rivera Lazú*, 89 D.P.R. 254 (1963). Además, véanse: E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. I, págs. 79–88; J. Nieves Marrero, *Breves apuntes sobre el desarrollo del derecho sucesorio del hijo adoptivo*, 19 Rev. Jur. U.I.A. 494–500 (1985).

herederos forzosos que contenía el texto vigente. Con esta reforma se equipararon los derechos sucesorales del hijo adoptivo con los del hijo biológico. *Feliciano Suárez, Ex parte*, supra, pág. 411. Esta legislación quedó en vigor hasta que se completó la reforma con la aprobación de la Ley Núm. 86 de 15 de junio de 1953 (31 L.P.R.A. secs. 531–539) con la cual se integró plenamente al adoptado, para todos los efectos legales, con la familia del adoptante y donde se establecieron los Arts. 132 y 133 del Código Civil según leen hoy. Estos cambios se caracterizaron por imprimir a la adopción un carácter esencialmente social donde existe un alto interés público. *M.J.C.A., menor v. J.L.E.M., menor, supra.*

No obstante los cambios realizados, aún subsiste incertidumbre en cuanto a los derechos sucesorales de los hijos adoptados antes de 1947 debido a que la legislación de 1953, por disposición expresa del Art. 138 del Código Civil, 31 L.P.R.A. sec. 539, no aplica a las adopciones realizadas antes de 1947, excepto cuando las partes que intervinieron en tal acto hubieran acudido al tribunal para solicitar que la adopción celebrada se rija por la nueva legislación.[9] Por consiguiente, en todas las adopciones realizadas antes de 1947, que no se hayan ajustado a las disposiciones de la legislación de 1953, rigen los Arts. 132 y 133 del Código Civil según disponían antes de 1947. Esta distinción ha sido objeto de varias críticas. Por ejemplo, en la opinión disidente del Juez Asociado Señor Belaval en *Ginés v. Ayala Rodríguez*, 84 D.P.R. 245, 252 y 253 (1961), éste expresó que la Ley Núm. 53, *supra*, por su carácter interpretativo de la ley anterior, tenía efectos retroactivos, de ma-

---

[9] El Art. 138 (31 L.P.R.A. sec. 539) dispone:

"Las adopciones celebradas bajo la legislación anterior se regirán por dicha legislación y surtirán todos sus efectos según la misma, sin limitación de ningún género. Disponiéndose, que las partes que intervinieron originalmente en una adopción verificada con anterioridad a la vigencia de esta Ley, podrán recurrir al Tribunal Superior mediante petición a los efectos de que la adopción ya celebrada se rija por las disposiciones de esta Ley. El tribunal podrá aprobar la petición para que ésta surta efecto y tenga validez."

nera que mediante ésta, la Legislatura había aclarado la confusión existente en los derechos hereditarios de los hijos adoptivos, ya hubiesen sido adoptados antes de 1947 o después. El Prof. E. González Tejera, en su obra *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. I, págs. 86–88, también apoya esta posición.

Ahora bien, en la cuestión planteada ante nos, no están involucrados los derechos de un hijo adoptivo *vis-à-vis* los derechos de herederos forzosos consanguíneos, de acuerdo con lo establecido en el Art. 132 del Código Civil, *supra*. Es en esta disposición de ley en que se ampara la parte demandada recurrente para fundamentar su posición de que la parte demandante recurrida no es un heredero forzoso, toda vez que no se llevó a cabo la petición permitida por el Art. 138 del Código Civil, *supra*. Además, señala que el antiguo Art. 133, *supra*, aplicable en este caso, confiere exclusivamente al adoptado los derechos de un hijo legítimo en la familia del adoptante porque no dispone expresamente que los descendientes del adoptado tendrán tales derechos.

El tribunal de instancia decidió que los derechos del adoptado "se transfieren a los descendientes del adoptado de manera tal que sus hijos vienen a ser nietos del adoptante tal y como si fuesen nietos biológicos de éste". Tiene razón. Veamos.

Aún no hemos tenido la oportunidad de expresarnos sobre el derecho de los descendientes de un adoptado en la herencia del adoptante dentro del contexto de la legislación sobre adopción anterior a 1947. Sin embargo, de las expresiones que hemos hecho en varios casos se puede deducir el derecho de los descendientes del hijo adoptivo como herederos forzosos del padre adoptante.

En *Ex parte Ortiz y Lluberas*, 42 D.P.R. 350 (1931), ocho (8) hijas adoptivas reclamaron su condición de herederas de su madre adoptante, Rosa Lluberas Rodríguez, quien falleció bajo testamento ológrafo en el cual las había igno-

rado totalmente, instituyendo como único y universal heredero al Sr. Arturo Lluberas Rodríguez.[10] La causante no había dejado ascendientes ni descendientes. Al confirmar al tribunal de instancia expresamos que, *en ausencia de herederos forzosos*, los hijos adoptivos tienen derechos sucesorios, aun cuando el adoptante muera bajo testamento y los excluya, porque en ausencia de hijos legítimos, los hijos adoptivos heredan como hijos legítimos. Íd., pág. 353. Además, expresamos que bajo la ley vigente entonces, los hijos adoptivos eran herederos forzosos. Íd., pág. 356.

En el segundo caso de *Sosa v. Sosa*, supra, decidido en 1946, identificamos el Art. 133 del Código Civil de 1930 como la fuente de los derechos hereditarios del hijo adoptivo. Establecimos que el hijo adoptivo tiene en la herencia, tanto testada como intestada, todos los derechos del hijo legítimo en tanto y en cuanto esos derechos no perjudiquen la legítima de otros herederos forzosos. Íd., págs. 610–611. Entre los derechos que adquiere el hijo adoptivo está anular la institución de herederos por preterición. Íd., págs. 618–619.

En *Valladares de Sabater v. Rivera Lazú*, supra, resuelto en 1963, aclaramos el alcance que tiene la adopción en la creación de relaciones familiares entre el adoptante y el adoptado. La adopción se realizó en 1925, falleciendo la causante en 1960. Comparecieron a solicitar la herencia varios primos segundos y primos terceros, parientes en quinto y sexto grado en la línea colateral, y una hija adoptiva de un hermano de la causante, pariente en tercer grado en la línea colateral. Confirmamos la sentencia del tribunal de instancia que declaró a la sobrina adoptada única heredera por haber fallecido intestada la causante y por no haber dejado heredero forzoso. Al argumento de los parientes consanguíneos al efecto de que antes de 1947 se heredaba sólo del padre adoptante, expresamos que desde 1902 la adopción incorpora al hijo adoptivo, no en la heren-

---

[10] Aparentemente un hermano de la causante.

cia, sino en la familia del adoptante, como si fuera un hijo legítimo. De manera que el hijo adoptado se convertía, como en este caso, en sobrino de la hermana del adoptante.

Podemos observar que al interpretar los Arts. 132 y 133 no sólo hemos equiparado los derechos del hijo adoptivo con los de otros herederos forzosos —salvo la excepción del derecho preferente establecido en la ley— entre éstos, la facultad de anular la institución de herederos si es preterido, sino que, además, en la sucesión intestada de los familiares de su padre adoptante tiene derecho a excluir en el orden sucesorio a herederos de grado inferior, aunque éstos sean parientes consanguíneos del adoptante.

Si se le han reconocido tales derechos en la herencia de los familiares del padre adoptante, con más razón hay que reconocer el derecho de los descendientes de un hijo adoptivo, como herederos forzosos que son, en la herencia de su abuelo adoptante.

Los tratadistas puertorriqueños apoyan nuestra posición. Señala Luis Muñoz Morales, en sus *Anotaciones al Código Civil de Puerto Rico*, supra, pág. 442, lo siguiente:

> Si el hijo adoptivo ... tiene respecto a su padre adoptante los mismos derechos de un hijo legítimo; y si los derechos de estos hijos legítimos se transmiten a sus descendientes, ... lógicamente hemos de sostener que igual derecho tienen los hijos y descendientes del hijo adoptivo. En nuestro Código vigente llegamos a esta conclusión en virtud de una *deducción lógica*. (Énfasis suplido.)

Como podemos notar, desde 1940 hay opiniones eruditas en ese sentido. De manera similar se expresa el profesor González Tejera, *op. cit.*, pág. 87:

> Luego de los pronunciamientos hechos por el Tribunal en *Valladares [de Sabater v. Rivera Lazú]* y *Rivera Coll [v. Tribunal Superior]*, se *deduce lógicamente*, que en Puerto Rico tanto el adoptante como sus parientes pueden suceder al adoptado y éste y sus parientes pueden heredar a aquéllos, bajo las normas

... en torno a preferencias por razón de grados y órdenes sucesorios. (Énfasis suplido.)

De lo anterior, surge que es totalmente improcedente el planteamiento de los recurrentes.([11]) Es suficiente señalar

---

([11]) Los demandados recurrentes aducen, también, que la adoptada no llegó a adquirir derecho alguno en la herencia, que pudiera transmitir a sus hijos, debido a que murió antes que la adoptante. Este planteamiento es totalmente improcedente. Los nietos de la causante no heredan por conducto de su madre premuerta, sino directamente por derecho propio; ya que son los únicos herederos forzosos en línea descendiente.

"Cuando la ley llama a la herencia la estirpe del hijo predifunto, dicha estirpe no representa a la persona de éste, ni siquiera a su grado sucesorio, ya que hereda directamente y por su propio derecho, si bien con sujeción al módulo cuantitativo de la división *in stirpes*." (Énfasis suprimido.) R.M. Roca Satre, *Observaciones críticas sobre la tendencia expansionista del derecho de representación sucesoria*, LXXXVIII Rev. Gen. Leg. Jur. 581, 598 esc. 3 (2da época 1943).

Al no ser mencionados en el testamento, se les privó tácitamente de su derecho a la legítima. Por lo tanto, hubo preterición de heredero forzoso. Art. 742 del Código Civil, 31 L.P.R.A. sec. 2368. *Cabrer v. Registrador*, 113 D.P.R. 424, 437 (1982); *Blanco v. Sucn. Blanco Sancio*, 106 D.P.R. 471, 478 (1977). Cuando hay preterición de un heredero forzoso no se anula la totalidad del testamento, pero se produce la nulidad de la institución de herederos. Subsisten, sin embargo, las mandas (legados) y mejoras que no sean inoficiosas, es decir, que no afecten la legítima. Art. 742 del Código Civil, *supra; Cabrer v. Registrador*, supra, págs. 437–438.

Finalmente, señalan los demandados-recurrentes que habiéndose tomado el Art. 133 del Art. 214 del Código Civil de Luisiana, debemos recurrir a la jurisprudencia de esa jurisdicción y a los comentaristas del Código Civil francés para precisar el contenido de nuestro artículo. En *Rivera Coll v. Tribunal Superior*, 103 D.P.R. 325, 327 (1975), expresamos que:

"A partir del 15 de junio de 1953, con la aprobación de las leyes Núm. 85 y Núm. 86 de ese año ... respectivamente, tanto el procedimiento para la adopción como la figura jurídica de la adopción son el producto de nuestra autoctonía. De ahí que recurrir a interpretaciones de estatutos foráneos, por persuasivos que parezcan, resulta en futilidad. La decisión del problema ante nos tiene por tanto que depender de nuestra propia interpretación de la intención legislativa al aprobarse las citadas leyes."

Precisamente, estas leyes tuvieron el propósito de reconocer, expresamente, que entre el adoptante y el adoptado existen relaciones de parentesco; relaciones que existían aún antes de la reforma de la adopción de 1947. *Valladares de Sabater v. Rivera Lazú*, supra. Además, según señalamos anteriormente, al adoptarse el Art. 214 de Luisiana, *supra*, se hicieron cambios significativos que variaron su alcance. Por consiguiente, es igualmente improcedente este señalamiento del demandado-recurrente.

Cabe señalar que el Art. 214 de Luisiana, que no reconocía a los descendientes de un hijo adoptivo derechos sucesorales en la herencia del adoptante, fue enmendado, disponiendo actualmente:

"The adopted person is considered for all purposes as the legitimate child and forced heir of the adoptive parent or parents, including the right of the adopted person or his lawful descendants to inherit from the adoptive parent ...." 16 *West's RSA–C.C.*, pág. 39 (Sup. 1973).

que si el derecho a herencia no estuviera comprendido en el Art. 133, *supra*, tendríamos el resultado anómalo de que los descendientes del adoptado no tendrían derechos sucesorales, ni en la familia adoptiva ni en la natural, ya que sobre ésta, según el Código Civil y el caso *Rivera Coll v. Tribunal Superior*, 103 D.P.R. 325, 331–332 (1975), se rompe todo vínculo, una vez realizada la adopción.

Por consiguiente, tomando en consideración los propósitos de la adopción de crear una relación permanente de parentesco revestida de consecuencias jurídicas, el texto del Art. 133 que se refiere específicamente al concepto familia, y no exclusivamente al de herencia, para fijar la posición del adoptado como la de un hijo legítimo, la trayectoria de nuestra doctrina desde *Ex parte Ortiz y Lluberas*, supra, en especial, lo resuelto en *Valladares de Sabater v. Rivera Lazú*, supra, y el principio hermenéutico enunciado en el primero de que los estatutos sobre adopción deben interpretarse liberalmente a favor del hijo adoptivo, *Ex parte Ortiz y Lluberas*, supra, pág. 356, opinamos que en Puerto Rico, aun antes de 1947, la adopción creaba lazos de parentesco entre el adoptante, el adoptado y los descendientes de éste con las correspondientes consecuencias jurídicas en el orden sucesoral. Para todos los fines debe considerarse al adoptado como hijo legítimo del adoptante, siendo sus descendientes, por ende, nietos del adoptante. Por ser parte del grupo familiar debe reconocérseles como tales para todos los fines legales. *Valladares de Sabater v. Rivera Lazú*, supra, págs. 261–262. Como los demandados-recurrentes no son herederos forzosos, no entra en juego la excepción preferente que respecto a éstos priva en el orden sucesoral, según establecido en la legislación anterior a 1947.([12])

---

([12]) No comprendemos cuál fue la justificación para mantener este condicionamiento al realizarse la reforma de la adopción de 1953. El hijo adoptivo, haya sido adoptado antes de 1947 o después, debe estar en igualdad de condiciones que el dado por la naturaleza. Véase el razonamiento del Juez Asociado Señor Todd Jr., en la opinión disidente del segundo caso de *Sosa v. Sosa*, 66 D.P.R. 606, 621–622 (1946). Le

## III

La parte demandada-recurrente plantea que la escritura de adopción es nula por razón de que era necesaria la firma de tres (3) testigos instrumentales para que fuese válida como una disposición mortis causa, equiparando, de esta forma, la escritura de adopción con el testamento abierto. Basándose en lo expuesto en *Enciclopedia Jurídica Española*, Barcelona, Ed. Francisco Seix, 1910, T. 24, pág. 190 (*Pacto de Sucesión Futura*), que alegadamente indica que la adopción se ha considerado como un pacto de sucesión futura permitido por ley; la parte demandada recurrente pretende establecer que la escritura de adopción es una disposición mortis causa. Esta alegación no tiene base alguna. No existe relación alguna entre la disposición de bienes mortis causa y el procedimiento de adopción. Hemos examinado la cita indicada y ésta trata sobre las excepciones al Art. 1271 del Código Civil español (igual a nuestro Art. 1223 del Código Civil, 31 L.P.R.A. sec. 3421),[13] que permiten los pactos sobre sucesión futura.[14]

---

corresponde a la Legislatura eliminar de una vez y para todas esta incomprensible distinción.

[13] El Art. 1223 (31 L.P.R.A. sec. 3421) dispone:

"Pueden ser objeto de contrato todas las cosas que no están fuera del comercio de los hombres, aun las futuras.

"Sobre la herencia futura no se podrá, sin embargo, celebrar otros contratos que aquellos cuyo objeto sea practicar entre vivos la división de un caudal conforme al artículo 1009. [31 L.P.R.A. sec. 2875.]

"Pueden ser igualmente objeto de contrato todos los servicios que no sean contrarios a las leyes o a las buenas costumbres."

[14] "II. Excepciones no comprendidas en el art. 1.271. [del objeto de los contratos] —Cuatro señala M. Scaevola; casos, todos ellos, de contratos *inter vivos*, que, haciendo relación al momento en que por muerte del causante se abre su sucesión, aparecen, no obstante, permitidos por el Código en disposiciones especiales. Son esas excepciones las siguientes:

"I. La del art. 177, que da al adoptado derecho a heredar fuera de testamento al adoptante si en la escritura de adopción se obligó éste á instituirlo heredero; modo contractual sucesorio originalísimo, probablemente sin parecido en ninguna otra legislación, ya que sin él se crea un sucesor abintestato precisamente para el caso en que el adoptante falleciese sin haber otorgado testamento; dándose, además, la anomalía de que en la parte del Código destinada á regular la sucesión intestada no se fije lugar ni cuota para los hijos adoptados que se encuentren en el caso indicado ni

El particular tipo de adopción que allí se menciona, con la obligación del adoptante de instituir heredero al adoptado en la escritura de adopción, es una modalidad de suceder excluida del derecho puertorriqueño, que no la menciona, Art. 549 del Código Civil, 31 L.P.R.A. sec.1931,[15] y que se prohíbe expresamente en el Art. 1223, *supra.* Más importante aún, y según señaláramos anteriormente, en Puerto Rico, al adoptarse el Código Civil de 1902, se rechazó la normativa sobre adopción existente en España. Es decir, el Art. 177 del Código Civil español, al cual se refiere el demandado recurrente, fue expresamente derogado. Por lo tanto, éste es totalmente impertinente a la controversia ante nos. De otro lado, el Art. 139 del Código Civil de 1930, vigente al momento de la adopción en controversia, disponía lo siguiente con relación al procedimiento de adopción.

> La adopción se verificará por escritura pública, expresando en ella las condiciones con que se haya hecho, y se inscribirá en el registro civil correspondiente, después de haberla aprobado el tribunal de distrito.[16]

No existía requisito alguno de la comparecencia de tres (3) testigos instrumentales para el otorgamiento de la escritura. La adopción realizada cumplió con los procedimientos legales vigentes.

Por todo lo antes expuesto, concurrimos con la sentencia que hoy emite el Tribunal.

---

se les nombre para nada." Enciclopedia Jurídica Española, Barcelona, Ed. Francisco Seix, 1910, T. 124, pág. 190 (*Pacto de Sucesión Futura*).

[15] El Art. 549 (31 L.P.R.A. sec. 1931) dispone:

"La propiedad se adquiere por la ocupación.

"La propiedad y los demás derechos sobre los bienes se adquieren y transmiten por la ley, por donación, *por sucesión testada e intestada* y por consecuencia de ciertos contratos mediante la tradición.

"Puede también adquirirse por medio de la prescripción." (Énfasis suplido.)

[16] La actual legislación no requiere que la adopción se verifique por escritura pública. Véanse los Arts. 612 y 613 del Código de Enjuiciamiento Civil, 32 L.P.R.A. secs. 2691 y 2692.

— o —

Opinión concurrente emitida por el Juez Asociado Señor
    Hernández Denton, a la cual se une el Juez Presidente
    Señor Andréu García.

Un examen de nuestro ordenamiento sucesorio revela
que un hijo de la hija adoptiva de una causante está en la
misma posición que un nieto biológico de dicha causante,
en cuanto a la herencia dejada por ésta, cuando la adopción
se realizó en 1943 y cuando a la causante no le sobrevivió
ningún ascendiente, cónyuge o descendiente (sin contar a
la hija adoptiva y sus hijos).

I

Nuestras leyes sobre los derechos sucesorios de los
adoptados han variado a través del tiempo. En lo perti-
nente, cambios sustanciales ocurrieron en 1947 y en 1953.
Por esta razón, dado que la adopción de Elba Vázquez se
hizo en 1943 y la muerte de Eduviges Jordán ocurrió en
1985, corresponde inicialmente examinar el asunto de qué
ley o cuerpo de normas aplica a la presente controversia.

La regla general es que para determinar los derechos en
la herencia de una persona se usará la ley vigente al mo-
mento de la muerte de ésta. *Martínez v. Vda. de Martínez*,
88 D.P.R. 443, 453 (1963). Por lo tanto, corresponde remi-
tirnos al estado de derecho vigente en 1985.

En tal momento, al igual que ahora, regía el Art. 138 del
Código Civil, 31 L.P.R.A. sec. 539, el cual fue aprobado en
1953 —Ley Núm. 86 de 15 de junio de 1953 (31 L.P.R.A.
secs. 531–539)— y que dispone lo siguiente:

> Las adopciones celebradas bajo la legislación anterior se re-
> girán por dicha legislación y surtirán todos sus efectos según la
> misma, sin limitación de ningún género; Disponiéndose, que las
> partes que intervinieron originalmente en una adopción verifi-
> cada con anterioridad a la vigencia de esta Ley, podrán recurrir

al Tribunal Superior mediante petición a los efectos de que la adopción ya celebrada se rija por las disposiciones de esta Ley. El tribunal podrá aprobar la petición para que ésta surta efecto y tenga validez. 31 L.P.R.A. sec. 539.

Tenemos, pues, que la ley vigente en 1985 nos remite a su vez a una "legislación anterior" que sería la que regía las adopciones previas a 1953.

La opinión concurrente emitida por la Juez Asociada Señora Naveira de Rodón resolvería que la legislación anterior aplicable eran los Arts. 132 y 133 del Código Civil de 1930 según disponían en 1943.(¹) No estamos de acuerdo.

Distinto a dicho enfoque, aplicaríamos a la presente controversia el estado de derecho según fue aclarado por la legislación aprobada en 1947, a la cual otorgamos efecto retroactivo. Mediante esta legislación se eliminó el Art. 132 del Código Civil, *supra*, y se enmendó el 133 para que leyera como sigue (Ley Núm. 353 de 13 de mayo de 1947):

Artículo 133.—El adoptado tendrá en la familia del adoptante los derechos y deberes y la consideración de un hijo legítimo. 1947 Leyes de Puerto Rico 681.

Esta legislación tuvo el efecto de eliminar la preferencia que antes se establecía a favor de los herederos forzosos del causante y en contra de los familiares adoptivos de éste. Se igualó al familiar adoptivo con el biológico a todos los efectos legales.

Desde 1947 la adopción incorpora al adoptado, no ya en la herencia, si no en la familia del adoptante, a todos los efectos legales. El parentesco por adopción ... se equipara al parentezco [sic] por consanguinidad, a todos los efectos jurídicos .... E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ed.

---

(¹) Dichos artículos disponían lo siguiente:

Art. 132: "La adopción no perjudicará en ningún caso los derechos que correspondan a los herederos forzosos, y que subsistirán como si la adopción no se hubiese verificado." Código Civil de 1930. Art. 133: "El adoptado tendrá en la familia del adoptante los derechos y deberes y la consideración de un hijo legítimo, con la excepción establecida en el artículo anterior." Código Civil de 1930.

Romallo, 1983, Vol. II, pág. 414. Véase *Valladares de Sabater v. Rivera Lazú*, 89 D.P.R. 254 (1963).

Tal y como lo expone el Juez Belaval en su opinión disidente en *Ginés v. Ayala Rodríguez*, 84 D.P.R. 245, 248 (1961), estamos convencidos de que la legislación aprobada en 1947 tiene carácter retroactivo. El Juez Belaval planteó que las enmiendas de mayo de 1947 fueron una respuesta de la Asamblea Legislativa a un llamado que, seis (6) meses antes, hizo el Juez Todd hijo en la opinión que emitió en el caso de *Sosa v. Sosa*, 66 D.P.R. 606 (1946), en la cual expresó que creía "que la Asamblea Legislativa de Puerto Rico debe enmendar todos los artículos pertinentes en nuestros códigos, relacionados con los hijos adoptivos, para fijar con claridad esos derechos. De no hacerlo continuará reinando la incertidumbre y las cortes legislando". *Sosa*, supra, pág. 622, opinión disidente del Juez Asociado Señor Todd.

Continúa el Juez Belaval exponiendo su teoría:

> Estamos, pues, ante ... una ley interpretativa, con efecto retroactivo tácito, vigente desde la fecha misma de la ley interpretada por ella. ... [Las leyes interpretativas son] dictadas generalmente para aclarar alguna duda que ha podido surgir con ocasión de aplicar el texto anterior. *Ginés v. Ayala Rodríguez*, supra, pág. 252, opinión disidente del Juez Asociado Señor Belaval.

Esta tesis es apoyada por el profesor González Tejera:

> Creemos que los problemas continuarán presentándose en situaciones similares a *Ginés*. Por ello nos parece más lógica, y si se quiere, más práctica la solución del Juez Belaval. El hijo adoptivo es un descendiente del adoptante a todos los efectos legales, no importa la fecha de la adopción. González Tejera, *op. cit.*, Vol. I, pág. 88.

Por otro lado, la aprobación del Art. 138, *supra*, en 1953 no alteró el efecto retroactivo de la legislación de 1947. La "legislación anterior" —la cual, según dicho artículo, regirá las adopciones previas a 1953— es precisamente la legisla-

ción de 1947, por lo menos en cuanto a muertes ocurridas luego de 1947. No se puede sostener que el Art. 138, *supra*, tuviera el efecto de eliminar las ventajas que en 1947 se concedieron a los hijos adoptivos de padres que para este año aún no habían fallecido.

Coincidimos con la tesis expuesta sobre la retroactividad de la legislación de 1947. Por ende, resolveríamos la controversia al amparo de dicha legislación.[2]

## II

Al aplicar el derecho vigente en 1943, según aclarado con eficacia retroactiva por la legislación aprobada en 1947, concluimos que Juan Alberto Robles está en la misma posición que un nieto biológico de Eduviges Jordán. Al amparo de esta legislación, Elba Vázquez es hija de Eduviges Jordán para todos los efectos legales. Por ende, tenemos que concluir que Juan Alberto Robles, como hijo biológico de Elba Vázquez, tiene que considerarse como nieto de Eduviges Jordán con todas las consecuencias correspondientes en el ámbito sucesorio.

No habiéndole sobrevivido ningún otro descendiente a Eduviges Jordán, su nieto Juan Alberto Robles se considera heredero forzoso de dicha causante. Eduviges Jordán otorgó testamento abierto en el que no mencionó ni dejó nada a dicho nieto. Por tal razón, concluimos que Juan Alberto Robles fue preterido. En estas circunstancias, pro-

---

[2] No existe precedente alguno que nos obligue a rechazar dicha teoría. El propio caso de *Ginés v. Ayala Rodríguez*, 84 D.P.R. 245 (1961), fue resuelto mediante sentencia sin opinión del Tribunal. Las expresiones en *Valladares de Sabater v. Rivera Lazú*, 89 D.P.R. 254 (1963), relativas a la aplicabilidad de los Arts. 132–133 del Código Civil de 1930 tal como disponían antes de 1947 a controversias sobre adopciones realizadas antes de dicha fecha, no nos obligan debido a que no eran necesarias para la resolución del caso. Además, en *Feliciano Suárez, Ex parte*, 117 D.P.R. 402, 412 esc. 7 (1986), expresamente consignamos que el argumento expuesto por el Juez Belaval en su opinión disidente en *Ginés* no fue planteado ante el Tribunal y que por tal razón no adoptábamos posición al respecto. El caso de *Sosa v. Sosa*, 66 D.P.R. 606 (1946), no afecta la solución a este problema, pues fue resuelto antes de que se aprobara la legislación de 1947.

cede la confirmación de la sentencia del foro de instancia. Arts. 735–737 y 741–742 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 2361–2363 y 2367–2368; González Tejera, *op. cit.*, Vol. II, pág. 452.

El enfoque adoptado por la opinión concurrente de la Juez Asociada Señora Naveira de Rodón llevaría al resultado correcto, pero proveería base para concluir que se le está otorgando validez a la excepción establecida por los Arts. 132 y 133, *supra*, según disponían en 1943. La excepción a favor de los herederos forzosos del causante adoptante, establecida por los viejos Arts. 132 y 133, *supra*, es de muy dudosa validez constitucional.[3] Por esta razón, en su opinión concurrente el Juez Asociado Señor Rebollo López concluye que es inconstitucional aplicar dichos artículos en este o en cualquier caso en que se discutan los derechos relacionados a la herencia de una persona fallecida luego de 1952, independientemente de cuándo ocurrió la adopción. Coincidimos con esta preocupación.

Como la sentencia del Tribunal confirma la sentencia recurrida sin adoptar un estado de derecho de dudosa validez constitucional, concurrimos.

---

[3] Considerando la vigencia desde 1952 de nuestra actual Constitución, la reforma al Código Civil relativa a la adopción realizada en 1953 —Ley Núm. 86 de 15 de junio de 1953 (31 L.P.R.A. secs. 531–539)— y la Ley Núm. 17 de 20 de agosto de 1952, la cual decretó con efecto retroactivo a 25 de julio de 1952 (31 L.P.R.A. sec. 441) que "[t]odos los hijos tienen respecto a sus padres y a los bienes relictos por éstos, los mismos derechos que corresponden a los hijos legítimos", podría plantearse que respecto a una muerte en 1985 sería inconstitucional adoptar una interpretación estatutaria que conceda menos derechos a un adoptado que los que tendría si hubiera sido adoptado luego de 1953. Para estas adopciones posteriores a 1953 rigen los actuales Arts. 132 y 133 del Código Civil, 31 L.P.R.A. secs. 533 y 534:

Art. 132: "El adoptado será considerado para todos los efectos legales como un hijo legítimo del adoptante. El adoptante será considerado como el padre legítimo del adoptado." 31 L.P.R.A. sec. 533.

Art. 133: "Con [la] adopción cesarán todos los derechos, deberes y obligaciones del adoptado en su familia natural o biológica y los de ésta con el adoptado." 31 L.P.R.A. sec. 534.

## — O —

Opinión concurrente y disidente del Juez Asociado Señor Negrón García.

## I

La adopción de Elba Iris Vázquez Ramírez fue aprobada judicialmente el 23 de julio de 1943. En principio sus derechos en la herencia de su madre adoptiva Eduviges Jordán Granel se rigen por la ley de esa época, Arts. 132 y 133 del Código Civil de 1930, los que disponen:

Art. 132 —La adopción no perjudicará en ningún caso los derechos que correspondan a los herederos forzosos, y que subsistirán como si la adopción no se hubiese verificado.

Art. 133 —El adoptado tendrá en la *familia* del adoptante los derechos y deberes y la consideración de un hijo legítimo, con la excepción establecida en el artículo anterior. (Énfasis suplido.)[1]

En 1947 se enmendó el Art. 133, *supra*, para disponer:

---

[1] Este Art. 133 de la Ley Núm. 353 (1947 Leyes de Puerto Rico 681) proviene del Art. 214 del Código Civil de Luisiana de 1870. Establecía que "la persona adoptada tendrá todos los derechos de un hijo legítimo en la *sucesión* (*estate*) de la persona que lo adoptó, con la excepción anterior". (Énfasis y traducción nuestros.) Al incorporarse en Puerto Rico se utilizó el término "familia" y no "sucesión".

La Juez Asociada Señora Naveira de Rodón en su opinión concurrente cita, contrario a su posición, a Luis Muñoz Morales, quien señala:

"No podemos suponer que los redactores y traductores del Código de 1902 dejaran de anotar la apreciable diferencia que entre ambos conceptos existe; pues mientras el concepto *estate* se refiere a la parte material, ó sea a los bienes, propiedades, patrimonio, herencia, etc ...; el concepto *family* se refiere a la parte personal ó sea al linaje, genealogía ó relación de parente[s]co entre los individuos." L. Muñoz Morales, *Reseña histórica y anotaciones al Código Civil de Puerto Rico*, Río Piedras, Junta Editora de la U.P.R., 1947, Libro Primero, pág. 420.

Vemos, pues, que el concepto "familia" no incluye la parte material mientras que el de sucesión sí. Ahora bien, bajo el Art. 132 del Código Civil de 1930, en reiteradas ocasiones hemos concedido a los hijos adoptados antes de 1947, *en ausencia de herederos*, derechos en las herencias de sus padres adoptantes. *Sosa v. Sosa*, 66 D.P.R. 606 (1946); *Lugo, Ex parte; Ortiz, etc., Opositoras*, 64 D.P.R. 868 (1945); *Bardeguez v. Bardeguez*, 48 D.P.R. 713 (1935); *Ex parte Ortiz y Lluberas*, 42 D.P.R. 350 (1931).

...El adoptado tendrá en la familia del adoptante los derechos y deberes y la consideración de un hijo legítimo. 1947 Leyes de Puerto Rico 681.

Subsiguientemente, el Art. 138 (31 L.P.R.A. sec. 539) —preceptivo sobre la forma de realizar la adopción— fue enmendado por la Ley Núm. 86 de 15 de junio de 1953 (31 L.P.R.A. secs. 531–539) del modo siguiente:

*Las adopciones celebradas bajo la legislación anterior se regirán por dicha legislación y surtirán todos sus efectos según la misma, sin limitación de ningún género*; Disponiéndose, que las partes que intervinieron originalmente en una adopción verificada con anterioridad a la vigencia de esta Ley, *podrán recurrir al Tribunal Superior mediante petición a los efectos de que la adopción ya celebrada se rija por las disposiciones de esta Ley.* El tribunal podrá aprobar la petición para que ésta surta efecto y tenga validez. (Énfasis suplido.) 31 L.P.R.A. sec. 539.

En el caso de autos, los padres adoptantes Joaquín Jiménez Matute y su esposa Eduviges jamás comparecieron al Tribunal Superior a solicitar que la adopción de Elba Iris se gobernara bajo esa nueva legislación. Por ende, aplica la vigente al momento de la adopción. Lo contrario sería darle efecto retroactivo al Art. 133, *supra*, de 1947 sin que surja expresamente un mandato al efecto tal y como lo exige el Art. 3 del Código Civil, 31 L.P.R.A. sec. 3.

No obstante, ante la ausencia de herederos forzosos de su madre adoptante Eduviges, la única legitimaria era Elba Iris y, habiendo premuerto, sus nietos son herederos forzosos con derecho a participar en la herencia.[2] Por lo tanto, concurrimos con la sentencia dictada hoy de que la cláusula de institución de herederos en el testamento de Eduviges es nula por preterición, subsistiendo, sin em-

---

[2] Los recurrentes Héctor Jiménez Juncos *et als.* se quejan de que es una injusticia. Aducen que la prueba incontrovertida demostró que Elba Iris, siendo menor de edad, abandonó su casa sin que ella ni sus hijos volvieran a tener relación alguna con los padres adoptivos.

La dificultad con este planteamiento es que la ley vigente no permite otra solución.

bargo, las mandas y los legados en cuanto no sean inoficiosas. Art. 742 del Código Civil, 31 L.P.R.A. sec. 2368.

## II

Aclarado este extremo, discrepamos del pronunciamiento de la Juez Asociada Señora Naveira de Rodón en cuanto a que "en Puerto Rico, *aun antes de 1947, la adopción creaba lazos de parentesco entre el adoptante, el adoptado y los descendientes de éste con las correspondientes consecuencias jurídicas en el orden sucesoral. Para todos los fines debe considerarse al adoptado como hijo legítimo del adoptante, siendo sus descendientes, por ende, nietos del adoptante.* Por ser parte del grupo familiar debe reconocérseles como tales para *todos los fines legales*". (Énfasis suplido.) Opinión concurrente de la Juez Asociada Señora Naveira de Rodón, pág. 445.

Por fíat *judicial* no podemos darle efectos retroactivos y equiparar toda adopción, independientemente de la legislación aplicable.

Distinto a la premisa que anima a la Juez Asociada Señora Naveira de Rodón, el transcrito Art. 138, *supra*, no está inoperante ni nos corresponde derogarlo. Ello es función indelegable de la Asamblea Legislativa y mientras subsista tenemos que darle eficacia; en aras de la liberalidad, no podemos ignorarlo.

El Art. 138, *supra*, tiene un propósito legítimo en el desarrollo y evolución de la adopción en Puerto Rico: evitar que pueda activarse la cláusula constitucional que prohíbe la aplicación *ex post facto* afectando los derechos de los herederos forzosos. Art. II, Sec. 1, Const. E.L.A., L.P.R.A., Tomo 1; Art. 3 del Código Civil, 31 L.P.R.A. sec. 3. Mucho hemos avanzado. Hoy nadie cuestiona seriamente los derechos hereditarios equitativos de los hijos adoptados con *posterioridad* a la Ley Núm. 53. Sin embargo, no cabe equipararlos ni darles el mismo tratamiento constitucional que

en materia filiatoria al amparo del precepto de no discrimen por razón de nacimiento. Const. E.L.A., *supra. En su sustrato, las diferencias entre el nacimiento y la adopción son obvias y no precisan de mucha elaboración.*

En resumen, aquellas adopciones efectuadas antes de 1947 —que no fueron revalidadas judicialmente o de otro modo para darle plena equiparación— conllevan que el adoptado sólo tenga los derechos hereditarios que proveía la referida legislación.

La pretensión de derogar judicialmente el Art. 138 (31 L.P.R.A. sec. 539) implicaría imponerle a los adoptantes esposos Jiménez-Jordán una intención que nunca tuvieron de darle al hijo adoptado mayores derechos. A fin de cuentas, la nueva legislación da esa oportunidad en vida de los adoptantes; si no lo hacen, no estamos autorizados a judicialmente suplirla.

### III

Finalmente, son improcedentes e injustos los honorarios de abogado contra los recurridos Robles Martínez *et al.* por tratarse de una cuestión novel que ha producido a nivel apelativo cuatro (4) ponencias distintas. *Corpak, Art Printing v. Ramallo Brothers*, 125 D.P.R. 724 (1990); *García Larrinua v. Lichtig*, 118 D.P.R. 120, 140 (1986); *Rodríguez v. John Hancock Mutual Life*, 110 D.P.R. 1, 8 (1980).