MARIANA GINÉS y LUIS NORBERTO AYALA, demandantes y recurrentes, *v.* CLEMENTE AYALA RODRÍGUEZ ET AL., demandados y recurridos.

*Número:* 11888  *Resuelto:* 21 de diciembre de 1961

*Valentín Polanco de Jesús,* abogado de los recurrentes; *Francisco M. Cadilla, E. Pérez Casalduc* y *José E. Díaz,* abogados de los recurridos.

### SENTENCIA

San Juan, Puerto Rico, a 21 de diciembre de 1961

José Ayala Rodríguez vivió en concubinato con Mariana Ginés desde el 1921 hasta el 2 de febrero de 1945, fecha de la muerte de aquel. El 9 de mayo de 1941, por escritura pública número treinta y ocho, ante el Notario don José E. Díaz, dicho José Ayala Rodríguez adoptó al menor Luis Norberto Ayala, previo consentimiento de sus padres y ratificación posterior de la anterior Corte de Distrito de Arecibo. Al morir José Ayala Rodríguez, su madre Josefa Rodríguez Espino, fue declarada única y universal heredera abintestato de su hijo José Ayala Rodríguez por la anterior Corte de Distrito de Arecibo. Al morir Josefa Rodríguez Espino el 24 de junio

de 1945, fueron declarados herederos de ella sus hijos y nietos aquí demandados y recurridos.

El 2 de octubre de 1952, los demandantes recurrentes Mariana Ginés y Luis Norberto Ayala presentaron ante el actual Tribunal Superior de Puerto Rico, Sala de Arecibo, esta acción civil para que se les reconocieran sus respectivos derechos dentro de la sociedad de hecho creada por el concubinato y en virtud de la adopción formalizada por el primer causante.

El 23 de febrero de 1955, el Juez sentenciador reconoció la sociedad de hecho creada por el concubinato pero concluyó que los trabajos que hubiera podido realizar Mariana Ginés, ayudando a su concubino José Ayala Rodríguez, habían sido compensados con los bienes que éste puso a su nombre al comprarlos de su hermano [sic] Miguel y con la participación que le correspondiera en el precio de dos fincas urbanas situadas en Manatí. En cuanto al hijo adoptivo resolvió que el adoptivo sólo tenía derecho en la herencia relicta al fallecimiento del adoptante siempre que no perjudicara los derechos de los herederos forzosos, y como al morir el adoptante existía una heredera forzosa, su madre Josefa Rodríguez Espino, el hijo adoptivo no heredaba nada.

En su recurso de revisión, los demandantes señalan dos errores: (1) error de derecho al declarar que Luis Norberto Ayala, como hijo adoptivo, no tenía derecho a heredar a su padre José Ayala Rodríguez y (2) al declarar satisfecha la participación de Mariana Ginés con los bienes que le fueron previamente entregados.

1. En cuanto al hijo adoptivo se refiere, es indudable que el Juez sentenciador se basó en nuestra decisión en el caso de *Lugo, Ex Parte; Ortiz Etc., Opositoras*, 64 D.P.R. 868 (1945) sin percatarse que en un caso nuestro posterior,— *Sosa* v. *Sosa*, 66 D.P.R. 606, (1946)—declaramos que dicho caso había sido erróneamente resuelto. (pág. 617.) Por lo tanto, aplicando el principio del caso de *Sosa* v. *Sosa*, supra, en el sentido, que el hijo adoptivo puede concurrir con otros

herederos forzosos pero sin perjudicar la legítima de dichos herederos forzosos, en caso de concurrir el hijo adoptivo con la madre del adoptante, corresponde a ésta la mitad de la herencia y al hijo adoptivo la otra mitad.

2. En cuanto a la concubina se refiere, si bien el Juez sentenciador le reconoció a la concubina Mariana Ginés ciertos derechos en la liquidación de la sociedad de hecho que tenía constituída con José Rodríguez Ayala, creemos que la participación de ella en dicha sociedad fue computada con alguna arbitrariedad, sin una relación directa con el cuerpo de bienes adquiridos durante la sociedad: *Torres* v. *Roldán*, 67 D.P.R. 367 (1947); *Danz* v. *Suau*, 82 D.P.R. 609 (1961). Si el Juez sentenciador entendiera que la prueba que tuvo ante sí no es suficiente para llevar a cabo la liquidación de dicha sociedad, puede citar a las partes a una nueva vista sobre este último extremo.

Por las razones expuestas, *se revoca la sentencia dictada por el Tribunal Superior de Puerto Rico, Sala de Arecibo el 23 de febrero de 1955 y se declara a Luis Norberto Ayala, como hijo adoptivo de José Ayala Rodríguez heredero de la mitad de los bienes relictos por el adoptante, anulándose las respectivas declaratorias de herederos de 24 de agosto de 1945 y de 5 de diciembre de 1945 y se devuelve el caso al Tribunal sentenciador para que proceda a liquidar de nuevo la sociedad de hecho existente entre José Ayala Rodríguez y Mariana Ginés, de acuerdo con los fundamentos aquí expuestos.*

Lo acordó el Tribunal y firma el señor Juez Presidente. El Juez Asociado señor Belaval, en opinión separada, en la cual concurre el Juez Asociado señor Santana Becerra, disiente de la parte de la sentencia que declara al hijo adoptivo heredero de la mitad de la herencia, por entender que a dicho hijo adoptivo le corresponde la totalidad de la herencia. El Juez Asociado señor Santana Becerra disintió también en opinión separada.

Opinión disidente del Juez Asociado señor Belaval, en la cual concurre el Juez Asociado señor Santana Becerra.

En el 1921, José Ayala Rodríguez, siendo casado con Brígida Acevedo, se puso a vivir con Mariana Ginés, por aquella fecha, una adolescente de quince años. Posteriormente, a fines del año 1926, José Ayala Rodríguez se divorció de su esposa Brígida Acevedo, y al liquidarse la sociedad de gananciales, se le adjudicaron a él dos fincas urbanas en la ciudad de Manatí, según consta de la escritura número setenta y uno de liquidación y división de bienes gananciales autorizada el día 16 de agosto de 1927 ante el Notario don José E. Díaz. José Ayala Rodríguez continuó viviendo con su concubina Mariana Ginés hasta el momento de su fallecimiento. La ilustrada Sala sentenciadora concluyó: "Que no obstante la falta de convenio entre ellos para repartirse los bienes adquiridos durante el concubinato, Mariana Ginés además de realizar los trabajos incidentales a su status de concubina, contribuyó también, de tiempo en tiempo, con otros trabajos de menos importancia, que en cierto modo, ayudaban a José Ayala Rodríguez en la explotación de su negocio".

Por escritura número treinta y ocho de nueve de mayo de mil novecientos cuarenta y uno, ante el Notario don José E. Díaz de Manatí, Puerto Rico, José Ayala Rodríguez, mayor de edad, divorciado, agricultor y vecino de Manatí, adoptó al menor Luis Norberto Ginés Maldonado, previo consentimiento de sus padres y ratificación de la anterior Corte de Distrito de Arecibo. En la escritura de adopción se hizo constar: "Que como consecuencia de esta adopción y a virtud de la misma, el adoptante le concede a dicho niño adoptado el derecho de usar su apellido y todos los demás que las Leyes de Puerto Rico confieren a los hijos como si fueran de legítimo matrimonio nacido, con las limitaciones determinadas por el Código Civil vigente, haciendo constar el adoptante que goza de la plenitud de todos sus derechos civiles y carece de hijos legítimos, legitimados ni naturales de clase alguna y que es mayor de cuarenta y cinco años de edad".

El día 2 de febrero de 1945 murió el adoptante José Ayala Rodríguez y su madre Josefa Rodríguez Espino fue declarada por la anterior Corte de Distrito de Arecibo "única y universal heredera abintestato de su hijo legítimo don José Ayala Rodríguez" por resolución de 24 de agosto de 1945. Dicha Josefa Rodríguez Espino había muerto el 24 de junio de 1945, o sea, antes de ser declarada heredera universal y única de su hijo. Los aquí demandados y recurridos forman la Sucesión intestada de dicha Josefa Rodríguez Espino, según declaración de la anterior Corte de Distrito de Arecibo de fecha 5 de diciembre de 1945.

El 2 de octubre de 1952 los demandantes Mariana Ginés y Luis Norberto Ayala Ginés presentaron ante el presente Tribunal Superior de Puerto Rico, Sala de Arecibo, una acción civil para que se le reconozcan sus respectivos derechos dentro de la sociedad de hecho creada por el concubinato y en virtud de la adopción realizada por el causante José Ayala Rodríguez.

El día 23 de febrero de 1955 la ilustrada Sala sentenciadora pasó juicio sobre ambas cuestiones, declarando, en cuanto a Mariana Ginés: "Que los trabajos realizados por Mariana Ginés ayudando a su concubino José Ayala Rodríguez en la explotación de su negocio, fueron justamente compensados con los bienes que éste puso a su nombre al comprarlos a su hermano [sic] Miguel por escritura otorgada el 10 de abril de 1942 y con la participación que le correspondiera del precio de venta de dos fincas urbanas situadas en Manatí según escritura otorgada el día 20 de junio de 1946" y en cuanto al hijo adoptivo "que a la fecha en que se realizó la adopción de Luis Norberto Ayala Ginés, era ley y doctrina fijada por nuestro Tribunal Supremo que el adoptivo sólo tenía derecho en la herencia relicta al fallecimiento del adoptante, siempre que no se perjudicaran los derechos de los herederos calificados como legítimos o forzosos; pero existiendo en este caso al fallecer en 1945 José Ayala Rodríguez, una ascendiente de

aquél, o sea, su señora madre doña Josefa Rodríguez Espino, el demandante no adquirió derecho en la herencia ya que de reconocérsele se habría perjudicado el derecho exclusivo de las ascendencia mencionada". Por tales razones declaró sin lugar la demanda.

En su recurso de revisión ante nos, los demandantes recurrentes señalan el siguiente error: (1) El Tribunal recurrido "cometió grave y manifiesto error de derecho al declarar que Luis Norberto Ayala Ginés como hijo adoptivo no tenía derecho a heredar a su padre José Ayala Rodríguez a la fecha de la muerte de éste el día 2 de febrero de 1945".

1. En cuanto al punto del hijo adoptivo, la ley aplicable al caso son los artículos 132 y 133 del Código Civil de 1930, que disponían:

"Art. 132—La adopción no perjudicará en ningún momento los derechos que correspondan a los herederos forzosos y que subsistirán como si la adopción no se hubiese verificado.

"Art. 133—El adoptado tendrá en la familia del adoptante los derechos y deberes y la consideración de un hijo legítimo, con la excepción establecida en el artículo anterior."

La ilustrada Sala sentenciadora, al aplicar estos dos artículos, descansó en nuestra anterior interpretación de los mismos en la decisión de Lugo, Ex parte: Ortiz, Etc., Opositoras, 64 D.P.R. 868 (Todd, hijo y Travieso) (De Jesús y Snyder, concurrentes) (25 de abril de 1945), cita precisa a las págs. 870 y 874. Este caso, hasta cierto extremo, dejaba sin efecto nuestras anteriores decisiones en los casos de Ex parte Ortiz y Lluberas, 42 D.P.R. 350 (Wolf) (1931), cita precisa a las págs. 353 y 356 y el caso de Bardeguez v. Bardeguez, 48 D.P.R. 713 (Córdova Dávila) (1935), cita precisa a la pág. 719. A su vez, el caso de Lugo, Ex parte; Ortiz, Etc. Opositoras, supra, fue dejado sin efecto en el caso de Sosa v. Sosa, 66 D.P.R. 606, (Córdova Díaz) (Todd hijo, disidente) (26 de julio de 1946), cita precisa a la pág. 617.

En los casos de *Ex parte Ortiz y Lluberas y Bardeguez* v. *Bardeguez*, supra, llegamos a la conclusión correcta que el hijo adoptivo era un verdadero heredero forzoso. Tal conclusión resulta enteramente correcta, considerando el parentesco civil de categoría agnaticia que produce la adopción. En el último caso de *Sosa* v. *Sosa*, supra, llegamos a la conclusión que el derecho a heredar del hijo adoptivo no podía perjudicar la legítima preferente de los herederos forzosos.

El Juez Roberto Todd hijo, al disentir del criterio de la mayoría en el último caso de *Sosa*, en opinión del 5 de noviembre de 1946—págs. 621-622—se expresó así: "Disiento de la opinión de la mayoría, además, porque considero que si bien las cortes al interpretar estatutos pueden, como decía el Juez Holmes, legislar 'intersticialmente', no deben hacerlo cuando el estatuto es tan defectuoso que, para interpretarlo y aplicarlo, hay que legislar judicialmente cada vez que surge un caso bajo el mismo. Y eso es lo que ocurre con los hijos adoptivos en Puerto Rico al resolverse que de hecho son o por lo menos equipararlos a los hijos legítimos. En tanto en cuanto a su porción hereditaria se refiere, si el adoptivo es igual que un hijo legítimo, dicha porción debería ser uniforme en todo momento. Pero no es así de acuerdo con la opinión de la mayoría. Depende de que no perjudique a los herederos forzosos y para no perjudicarlos es que entra en juego, no la ley, sino las cortes, para determinar en cada caso la cuantía de dicha porción. Hemos llegado al máximum en cuanto a legislar judicialmente se refiere.

"Debido a los cambios que ocurren en este Tribunal—últimamente con bastante frecuencia—y la posibilidad de variadas opiniones en el futuro sobre los debatidos e inciertos derechos hereditarios de los hijos adoptivos, tanto en la sucesión testada como en la intestada, creo que la Asamblea Legislativa de Puerto Rico debe enmendar todos los artículos pertinentes en nuestros códigos, relacionados con los hijos adoptivos, para fijar con claridad esos derechos. De no ha-

cerlo continuará reinando la incertidumbre y las cortes legislando."

Tal parece que la Asamblea Legislativa de Puerto Rico se hizo eco de esta llamada urgente a la clarificación de la norma, porque seis meses más tarde, aprobó con vigencia inmediata la Ley número 353 de 13 de mayo de 1947 declarando que "el adoptado tendrá en la familia del adoptante los deberes y derechos y la consideración de un hijo legítimo" y derogando expresamente el art. 132 que era el que establecía el principio que la adopción no perjudicaría los derechos de los herederos forzosos.

Estamos, pues, ante lo que en Derecho Civil se conoce como una ley interpretativa, con efecto retroactivo tácito, vigente desde la fecha misma de la ley interpretada por ella. Tomo Primero, Volumen Primero—Castán—Derecho Civil Español, Común y Foral pág. 409 (novena edición del Instituto Editorial Reus de 1955). Como bien afirma Castán "el mandato de retroactividad no es preciso que revista forma expresa; bastará que del sentido y finalidad de la ley resulte patente el propósito del legislador".

Puig Peña, sobre este mismo asunto, se pronuncia así: "La formulación del principio de la irretroactividad no supone nunca, como hemos dicho, la imposibilidad de que las leyes posteriores tengan alguna vez carácter retroactivo, afectando con su texto a las relaciones jurídicas surgidas al amparo de la ley anterior. Estas excepciones al principio irretroactivo se producen con las siguientes situaciones . . . (B) *Cuando el legislador dicta leyes que por su naturaleza y esencia suponen la retroactividad.*—Esto ocurre, ante todo, con las llamadas *leyes interpretativas*, dictadas generalmente para aclarar alguna duda que ha podido surgir con ocasión de aplicar el texto anterior. Este supuesto, en realidad, no debía plantear problema alguno, porque no se trata aquí de una contradicción entre la ley primera y la interpretativa, sino de una simple norma que aclara y explica aquella" . . . Tomo I Volumen I—Puig Peña—Tratado de Derecho Civil Español 440-

441 (edición de la Editorial Revista de Derecho Privado de 1957).

Como se ve, en el caso de una ley interpretativa—aquella que aclara algún extremo de una ley anterior—el Juez no se encuentra ante un problema de aplicación de ley sino ante un problema de interpretación. En el Derecho Norteamericano esto se considera como una búsqueda de la post intención legislativa. Sabido es la importancia que se le concede en el Derecho Norteamericano a esta post intención legislativa—algunas veces llamada interpretación legislativa de una ley anterior—para determinar el verdadero alcance del estatuto original, sobre todo, cuando resulta casi contemporánea con la norma judicial contraria: 2 Sutherland, Statutory Construction, 526–528, Sección 5110.

Cada norma en derecho tiene su historia, su sentido, su aura particular y deber judicial es extraer de sus orígenes, su razón de ser. Originalmente, la adopción era uno de los medios políticos, sociales y hasta económicos de que se valía el patriciado para lograr el engrandecimiento de sus casas. Castán nos habla de un caso excepcional de adopción: el de Augusto que se hizo proclamar por el Senado hijo adoptivo de Julio César para heredar el imperio. Marco Tulio—un pseudónimo eminente casi olvidado en la bibliografía jurídica española—nos habla de otro caso excepcional de adopción, el de don Sancho el Fuerte y don Jaime el Conquistador, dos reyes que se adoptaron y prohijaron mutuamente para heredarse el uno al otro y de esta forma, acrecentar sus privilegios y prerrogativas.

En el Derecho Romano, el cuadro de la agnación comprendía todos aquellos seres extraños a la familia, agrupados en torno a la potestad del *paterfamilias*, tales como los hijos adoptivos, los hijos naturales y la esposa. Como cuestión de realidad histórica, los hijos adoptivos tenían un derecho preferente a los hijos legítimos en la herencia del padre.

Las Leyes de Partidas empezaron a remediar la injusticia que contra los hijos legítimos había consagrado el Derecho

Romano y el Derecho Feudal en favor de los hijos adoptivos, ordenando la concurrencia de los hijos adoptivos (profijamientos) y los hijos legítimos en la herencia del padre. El Código Civil español prohibió la adopción a los que tuvieran hijos legítimos o legitimados, y en caso de no haberlos, prohibió el derecho a heredarse entre el adoptante y el hijo adoptivo, a menos que en la escritura de adopción, el adoptante se comprometiera a instituir al hijo adoptivo como su heredero (art. 177).

Aunque nuestro Código adoptó originalmente la prohibición de adoptar a los que tuvieran hijos legítimos o legitimados, no adoptó la prohibición del hijo adoptivo a heredar a su adoptante. De manera, pues, que los artículos 131 y 132 de nuestro Código, tal y como regían en el 1945, hay que interpretarlos como que permiten el derecho a heredar del hijo adoptivo. Como nuestro Código no permitía la adopción a los que tuvieran hijos legítimos o legitimados, esa frase utilizada en el art. 132, antes de ser derogado dicho artículo, en el sentido, que "la adopción no perjudicará en ningún momento los derechos que correspondan a los herederos forzosos y subsistirán como si la adopción no se hubiera verificado" queda reducida a la concurrencia del hijo adoptivo con los otros agnados, o sea, los hijos naturales debidamente reconocidos y la viuda, cada uno con una cuota fija y sin exclusión en el orden sucesorio, y en cuanto a esta cuota y a dicha exclusión en el orden sucesorio había que mantenerlos en el mismo vigor como si la adopción no se hubiere verificado.

Ahora bien, la única otra heredera forzosa que queda es la madre del adoptante, pero ésta no entra en el orden sucesorio, si hay hijos legítimos y casualmente, la categoría de que goza el hijo adoptivo, por parentesco civil, expresamente declarado por la Ley, es la de un hijo legítimo, que excluye a todos los demás herederos con excepción de los que entran en el cuadro de los agnados. La ley nuestra en el 1945 no prohibía la adopción cuando se tuviera ascendientes, sino cuando se tuvieran hijos legítimos o legitimados. Lo cual demuestra que

en caso de ascendientes vivos, el adoptante podía otorgar su parentesco civil al hijo adoptivo y éste sería llamado a la herencia con el mismo derecho de un hijo legítimo. Esta conclusión se reafirma una vez más cuando se aprueba la Ley Núm. 353 de 13 de mayo de 1947, en la cual al derogarse el art. 132 se elimina toda referencia al perjuicio del derecho de los herederos forzosos, que consideramos como una interpretación legislativa, contraria al criterio que expusimos en el último caso de *Sosa* v. *Sosa*, en la cual intentamos excluir de la cuota legitimaria a los hijos adoptivos cuando concurrían con otros herederos forzosos.

Frente al complejo doctrinal que forman cinco opiniones bastante contradictorias entre sí, y de una Ley interpretativa cuasi contemporánea, en abierta contradicción a la norma sentada por nosotros en el último caso de *Sosa* v. *Sosa*, debíamos sentar una nueva norma sobre esta cuestión litigiosa y declarar que de acuerdo con los artículos 132 y 133 del Código Civil de Puerto Rico, según regían en el 1945 la categoría de un hijo adoptivo en el orden sucesorio es la de un hijo legítimo, con todos los derechos sucesorales correspondientes al hijo legítimo y que la frase contenida en el art. 132, en el sentido, que "la adopción no perjudicará en ningún momento los derechos que correspondan a los herederos forzosos" no significa una exclusión del derecho legitimario a la sucesión de su padre adoptante cuando hubiera ascendientes forzosos, sino una concurrencia a la herencia con los hijos naturales reconocidos y la viuda, y que las participaciones de éstos en la herencia se mantendrían en el alcance que tendrían como si la adopción no se hubiese verificado.

Es claro que la legislación moderna sobre la adopción lo que se ha propuesto es eliminar el privilegio de único heredero que gozó el hijo adoptivo frente a los hijos legítimos del adoptante, permitiendo la concurrencia del hijo adoptivo, como un hijo más, con los otros hijos legítimos—caso de Puerto Rico; Ley número 100 de 6 de mayo de 1948 y Ley número 86 de 15

de junio de 1953—y con los hijos naturales e ilegítimos reconocidos y la **viuda**.

Siendo esto así, no hay duda que la ilustrada Sala sentenciadora erró al aplicar el caso de *Lugo, Ex parte; Ortiz, Etc., Opositoras*, supra, y negarle al hijo adoptivo, su derecho a heredar todo el caudal relicto, con exclusión de la madre del adoptante.

---

Opinión disidente separada del Juez Asociado Sr. Santana Becerra.

Me explico en este caso una situación en que el hijo adoptivo reciba la herencia en su totalidad, como ha concluido el distinguido compañero Juez Belaval en opinión en la cual concurro. Me explico que la herencia pudiera corresponder totalmente a la madre del causante, según concluyó la Sala sentenciadora siguiendo jurisprudencia nuestra. No me desagradaría que se dividiera entre el hijo adoptivo y la madre, que de hecho en las circunstancias de este caso era para el disfrute de los hermanos del causante, pero no acierto a encontrar la disposición de ley que a mi juicio permitiera tal repartición.

El artículo 132 del Código Civil (ed. 1930) en vigor hasta el 13 de mayo de 1947, disponía:

"La adopción no perjudicará en ningún caso los derechos que correspondan a los herederos forzosos, y que subsistirán como si la adopción no se hubiese verificado."

El artículo 133 hasta esa fecha disponía también:

"El adoptado tendrá en la *familia* del adoptante los derechos y deberes y la consideración de un hijo legítimo, con la excepción establecida en el artículo anterior." (Bastardillas nuestras.)

No hay la menor duda que la protección que los artículos 132 y 133 daban a los herederos forzosos en relación con el hijo adoptivo cubría tanto al heredero forzoso *testado* como al *intestado*.

Este Tribunal se enfrascó de lleno en esta cuestión en el primer y segundo casos de *Sosa* v. *Sosa* (1945) 64 D.P.R. 769, y (1946) 66 D.P.R. 606, y entre ellos, en *Lugo, Ex parte; Ortiz, Etc.* (1945) 64 D.P.R. 868. Los dos casos de *I. Sosa* no son directamente aplicables al de autos, por cuanto en ellos se trataba de una sucesión *testada*, y además, el hijo adoptivo concurría con *descendientes naturales*, no con ascendientes. Siendo una sucesión *testada*, en esos casos la legítima *forzosa* de los hijos naturales que eran herederos forzosos sólo constituía parte de la herencia *testada*, y al hijo adoptivo se le pudo reconocer participación en dicha herencia sin violentar el artículo 132, sin perjudicar los derechos de los herederos forzosos.

En caso directamente aplicable es el de *Lugo*, en donde como aquí, se trataba de una herencia *intestada*, y como aquí, la hija adoptiva concurría con la madre ascendiente, y con la viuda en el usufructo viudal, cosa que no afecta.

Siendo ésta una sucesión *intestada*, el pariente más próximo excluye al más remoto,—artículo 884 del Código Civil,—pero el grado que no queda excluido hereda en la *totalidad* de la herencia, y no a base de *legítimas forzosas* parciales, como en la *testada*.

Por eso en el caso de *Lugo*, y en ello concurrió todo el Tribunal, no le dimos nada a la hija adoptiva y todo a la madre, sujeto allí al usufructo de la viuda, porque no se le hubiera podido reconocer participación a la hija adoptiva en aquella sucesión *intestada*, donde no hay legítimas parciales, sin afectar el derecho de aquella madre sobre toda la herencia como heredera forzosa. Hasta ahí la Sala sentenciadora falló como correspondía de acuerdo con esa jurisprudencia.

Entiendo que la situación creada por nuestras decisiones en los dos casos de *I. Sosa*, dejó el problema de los derechos de los hijos adoptivos bajo los artículos 132 y 133 como entonces regían en un área de gran incertidumbre por un Tribunal

dividido en criterio. Por eso estoy conforme con el compañero Juez Belaval en el sentido de que la Ley 353 de 13 de mayo de 1947 aprobada en la Asamblea Legislativa inmediata que siguió a la segunda decisión de *I. Sosa* en donde se sugirió acción legislativa, y que derogó el artículo 132 y enmendó el 133, tuvo el efecto de ser una *declaración* del legislador sobre cuáles eran los derechos del hijo adoptivo. Creo, por lo tanto, que esa Ley era aplicable al caso de autos aunque el causante muriera antes de su aprobación porque ya regía cuando se resolvió este pleito. De no aceptarse esta interpretación de la Ley 353, procedería entonces a base del caso de *Lugo*, que se concediera la herencia en su totalidad a la madre pero no veo precepto estatutario ni decisión nuestra que permita dividirla, tratándose como he dicho de una sucesión *intestada*.