# 96 DTA 52

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA
PANEL I**

ACEVEDO ARROYO ANA E.
ALBERIO DELGADO PEDRO Y OTROS
Demandantes-Recurridos

v.

PUERTO RICO SUN OIL
Demandado-Peticionario

Núm. KLCE-96-0064

San Juan, Puerto Rico a 18 de marzo de 1996

Panel integrado por su presidente, Juez señor Amadeo Murga
y los Jueces señora Pesante Martínez y señor Rivera Pérez

Amadeo Murga, Juez Ponente

## TEXTO COMPLETO DE LA SENTECIA

Decidimos en esta ocasión si una ley posterior es meramente interpretativa de una anterior, de manera tal que las disposiciones sustantivas articuladas en la nueva ley tienen vigor desde la aprobación de la primera. El Tribunal de Primera Instancia ██ determinó en una extensa resolución que las disposiciones de la Ley Número 41 del 17 de agosto de 1990 meramente validaban o reconocían expresamente lo que estaba contenido en las disposiciones de la Ley Número 223 del 23 de febrero de 1974 y que, por lo tanto, existía desde esta última fecha el derecho a un período o períodos adicionales de tomar alimentos durante cualquier jornada adicional a la regular. En consecuencia, se negó a desestimar la reclamación que contra el patrono instaron los querellantes por este concepto en relación con períodos trabajados con anterioridad a 1990. Nosotros llegamos a una conclusión distinta y determinamos que la ley de 1990 no es meramente interpretativa y que procede revocar la resolución y desestimar la causa de acción por este concepto.

El 20 de febrero de 1996, emitimos una resolución dirigida a los recurridos para que mostraran causa por la cual no debíamos llegar al resultado intimado. Ambas representaciones legales de los recurridos sometieron articulados escritos que fueron presentados el 4 de marzo. ██

Su vehemente argumentación no logra variar nuestra opinión tomada luego de un sereno análisis.

## I

El derecho de los trabajadores a gozar un período de asueto para consumir alimentos dentro de la jornada de trabajo, una conquista laboral destinada a evitar condiciones de explotación por parte de

los patronos, ha sido objeto de desarrollo durante los últimos sesenta años. *Pamblanco v. Unión Carbide* 90 D.P.R. 712 (1964); *Sotillo v. Gasolina de Puerto Rico, Corp.*, Sentencia del 13 de junio de 1993; *Almodóvar v. Lutrón S.M., Inc.*, Núm. KLAN-95-00779, Circuito Regional VI, Tribunal de Circuito de Apelaciones, Sentencia de 17 de enero de 1996 (Pesante Martínez, Ponente).

En 1935, como parte de la Ley Número 35 de 7 de agosto de ese año, ■ en la cual se fijó en ocho horas el máximo de la jornada regular, se exigió además:

*"Todo patrono fijará en un sitio visible del establecimiento, planta, finca o sitio de trabajo, según fuere el caso, un anuncio impreso expresando el número de horas de trabajo que se exige diariamente a los empleados durante cada día de la semana, las horas de comenzar y terminar el trabajo, la hora en que empieza y termina el período destinado a tomar los alimentos; disponiéndose, que el tiempo señalado para tomar los alimentos no será menor de una hora."*

Mediante el Artículo 14 de la Ley 379 del 15 de mayo de 1948, ■ se reiteró lo dispuesto en la Ley Número 35 del 7 de agosto de 1935 y se añadió la disposición que para conveniencia del empleado y por estipulación de éste con el patrono, y sujeta a la aprobación del Comisionado del Trabajo se podía fijar un período menor.

En 1961, se enmendó por segunda vez el Artículo 14 de la Ley 379 ■ añadiéndosele el siguiente disponiéndose:

*"...que todo patrono que emplee o permita que un empleado trabaje durante la hora señalada para tomar los alimentos vendrá obligado a pagarle por dicha hora o fracción de hora un tipo de salario igual al doble del tipo convenido para las horas regulares."*

Esta enmienda creó, según resuelto en *Pamblanco v. Unión Carbide, supra,* una penalidad civil por la violación del derecho creado por ley.

En 1974, el Artículo 14 de la Ley 379 fue nuevamente enmendado. ■ Según reza la exposición de motivos, el propósito de la enmienda en lo referente al Artículo 14 fue el siguiente:

*El Artículo 14 de la ley actual no establece específicamente la hora en que los trabajadores podrán tomar sus alimentos. Esto ha dado lugar a que cada patrono, a su arbitrio, establezca el período de tomar los alimentos en su empresa, dándose casos en que se les requiere a los trabajadores laborar hasta más de seis horas consecutivas sin habérsele concedido tiempo para tomar sus alimentos. Esta situación, consideramos, va en detrimento de la salud de los obreros y del bienestar general de ellos y sus familiares. A los fines de corregir la misma es que se ha propuesto la enmienda al artículo ya mencionado. Esta fija el momento de comenzar a disfrutar del período para tomar alimentos en algún momento dentro de la cuarta y quinta hora consecutiva de trabajo, dándole suficiente flexibilidad a las partes para escoger dentro de esas dos horas el punto de partida para dicho descanso y asegurando a la vez que el descanso quede situado en un punto intermedio dentro de la jornada de trabajo."*

En lo pertinente, la enmienda al Artículo 14 dispuso:

*"El período destinado a tomar los alimentos deberá comenzar a disfrutarse no antes de concluida la tercera ni después de comenzada la sexta hora de trabajo consecutiva, de manera que en ningún momento se requiera a los empleados trabajar durante más de cinco horas consecutivas sin hacer una pausa en las labores para alimentarse.*

*Todo patrono que emplee o permita que un empleado trabaje durante el período destinado para tomar los alimentos vendrá obligado a pagarle por dicho período o fracción del mismo un tipo de salario igual al doble del tipo convenido para las horas regulares. En aquellos casos en que de acuerdo a las disposiciones de este artículo el período destinado para tomar los alimentos sea reducido a un período menor de una hora, el patrono vendrá obligado a pagar dicho tipo de salario igual al doble del tipo convenido para las horas regulares únicamente si emplea o permite que un empleado trabaje durante el período al cual ha sido reducida la hora señalada para tomar*

*alimentos."*

Nuevamente en 1990, el Artículo 14 sufrió otro cambio. ██ Esta vez la exposición de motivos señaló:

*"La Ley Número 379 de 15 de mayo de 1948, según enmendada, establece la jornada legal de trabajo en Puerto Rico. Su Artículo 14 reglamenta el período de tomar alimentos.*

*En ánimo de aclarar dudas existentes, esta Asamblea Legislativa estima conveniente reconocer de manera expresa en la ley que pueden existir más de un período para tomar alimentos, o sea dentro de la jornada regular de trabajo y cuando se realiza trabajo en tiempo extraordinario consecutivo a la jornada regular de trabajo, independiente uno del otro. Igualmente, permitir que el período de tomar alimentos, cuando se trabaja fuera de la jornada regular pueda también ser reducido u obviado en determinada situación para conveniencia del trabajador, previa aprobación por el Secretario del Trabajo y Recursos Humanos de la correspondiente estipulación entre el empleado y el patrono.*

*De esta forma se aclara expresamente la existencia de más de un período para tomar alimentos, lo que redundará en beneficio para la clase trabajadora puertorriqueña."*

El Artículo 14 fue enmendado de la manera siguiente:

*"Todo patrono fijará en un lugar visible del establecimiento, taller, fábrica, plantación, oficina o sitio de trabajo, según fuere el caso, un aviso impreso, haciendo constar el número de horas de trabajo que se exige diariamente a los empleados durante cada día de la semana, las horas de comenzar y terminar el trabajo, y la hora en que empieza y termina el período destinado a tomar los alimentos dentro de la jornada regular.*

*Los períodos señalados para tomar los alimentos que ocurran dentro o fuera de la jornada regular del empleado no serán menores de una (1) hora a menos que por razón de conveniencia para el empleado y por estipulación de éste y su patrono, con la aprobación del Secretario del Trabajo y Recursos Humanos, se fijare un período menor. En el caso de los períodos de tomar alimentos que ocurran fuera de la jornada regular del empleado, cuando no se trabaja más de dos horas después de la jornada regular, éstos podrán ser obviados sujeto al cumplimiento de los requisitos antes establecidos."*

Aunque no incide sobre la solución del presente recurso, para propósitos de tener un cuadro total y completo debemos señalar que, finalmente, mediante la Ley 83 del 20 de julio de 1995, se enmendó nuevamente el Artículo 14 de la Ley 379 a los efectos de hacer innecesaria la aprobación de parte del Secretario del Trabajo de la estipulación entre patrono y trabajador para reducir hasta 30 minutos el período de tomar alimentos.

Del historial anterior surge, claramente, que a pesar de que desde 1935 se disponía que los trabajadores tenían derecho durante su jornada regular de trabajo a un período de tomar alimentos no menor de una hora, no es hasta 1961 que se establece una penalidad civil por la infracción de ese derecho. Esta consistió en obligar al patrono a pagar a doble tiempo, el período de tomar alimentos que no le permitió tomar al empleado. *Pamblanco v. Unión Carbide, supra; Concreto Mixto, Inc. v. Tribunal Superior,* 92 D.P.R. 808 (1965); *Salgado v. Tribunal Superior,* 92 D.P.R. 367 (1965).

Aparece claro asimismo, que en 1974, el legislador limitó la flexibilidad de la concesión de la hora de tomar alimentos disponiendo que no podía concederse ni antes de haber concluido la tercera hora trabajada, ni después de concluida la sexta hora.

El propósito de esta enmienda fue el evitar que los trabajadores vinieran obligados a trabajar, sin un descanso para comer, un período de más de cinco horas consecutivas tal como podía ocurrir en ausencia de la limitación impuesta. Es diáfano, además, que las disposiciones relativas a la hora de tomar alimentos, están enmarcadas dentro de la jornada regular de trabajo de ocho horas fijada en la Ley Número 379.

Es evidente, asimismo, que la enmienda de 1974 no hizo referencia alguna a una hora de tomar alimentos durante períodos adicionales a la jornada regular. Es la Ley Número 41 del 17 de agosto de 1990, la que se refiere específicamente a períodos de tomar alimentos dentro y fuera de la jornada regular y faculta al Secretario del Trabajo y Recursos Humanos a reglamentar *"todo lo pertinente al cumplimiento de lo dispuesto en este artículo"*. Véase sección 1 de la Ley.

El examen de la evolución de este derecho nos permitiría fácilmente concluir que no es sino a partir del 17 de agosto de 1990 que los patronos vienen obligados a pagar doble tiempo cuando hagan que un trabajador labore durante la hora de tomar alimentos que haya fijado para su período de trabajo extra o adicional a la jornada regular. Como dicho período no necesariamente equivale a otra jornada adicional de ocho horas, resultó necesario reglamentar el derecho concedido fijando las obligaciones del patrono para ese variado período adicional. ■

Con el historial anterior, resultaría obvia la conclusión de que la pretensión de los querellantes, en el sentido de que el patrono viene obligado a pagarles una penalidad civil por no haberles concedido una hora de tomar alimentos durante los períodos que trabajaron para el patrono en exceso de la jornada regular, está claramente desamparada por la legislación laboral para cualquier período anterior al 17 de agosto de 1990. Lo que nos llevaría, sin más, a revocar la resolución recurrida y desestimar la causa de acción de los querellantes predicada en tal derecho.

Sin embargo, la Ley 41 del 17 de agosto de 1990 al crear el derecho a horas adicionales de tomar alimento expresó en su exposición de motivos que, *"en el ánimo de aclarar dudas existentes"*, era conveniente *"reconocer de manera expresa en la ley que pueden existir más de un período de tomar alimentos, o sea dentro de la jornada regular de trabajo y cuando se realiza trabajo extraordinario consecutivo a la jornada regular de trabajo, independiente uno del otro"*.

Este lenguaje y la posición del Secretario del Trabajo y Recursos Humanos que ha interpretado que la Ley del 1974 concede tal derecho, parecen haber persuadido al tribunal recurrido de que existe un derecho a un período adicional de tomar alimentos durante la jornada extraordinaria desde, por lo menos, 1974.

Lo que nos lleva directamente a la médula del recurso: Al interpretar el Artículo 14 de la Ley 379 antes de su enmienda de 1990, ¿qué peso debemos darle al lenguaje expresado en la exposición de motivos y el contenido de la Ley Número 41 del 17 de agosto de 1990? En otras palabras, ¿es la Ley de 1990 una enmienda interpretativa o aclaratoria del Artículo 14 de la Ley Número 379 o por el contrario una enmienda substantiva a sus términos?

Hay que convenir que si la enmienda de 1990 lo que hizo fue aclarar la interpretación y contenido del Artículo 14 de la Ley, según éste existía desde 1974, no hay duda de que el derecho a la hora de tomar alimentos durante las horas extras o jornada adicional existía antes de 1990. Si por el contrario, la Ley de 1990 creó un nuevo derecho, entonces se trata de una enmienda substantiva lo que no se retrotrae a 1974.

En un sistema de derecho civil como el nuestro, al hacer el análisis, debemos partir del reconocimiento de que la Legislatura tiene la facultad de interpretar sus propias leyes. Aunque las decisiones de los tribunales interpretan, también, la voluntad legislativa, es esta última, la agencia que con más autoridad puede interpretar su propia voluntad. Pierce v. Hobart 939 F2d 1305, 1309 (5to. Cir. 1991- Interpretando el sistema de derecho civil de Luisiana). Véase también la opinión disidente del Hon. Emilio Belaval en *Ginés v. Ayala* 84 D.P.R. 245, 248 (1961) y la concurrente del Hon. Federico Hernández Denton en *Robles Martínez v. Izquierdo,* **94 J.T.S. 94,** ___D.P.R. ___(1994).

L. Diez-Picazo y A. Gullón ■ reconocen que, tanto la doctrina como la jurisprudencia bajo el sistema de derecho civil, contemplan que por nueva legislación se establezcan normas que son meramente interpretativas de la legislación anterior. Igual norma es aceptada bajo el sistema de derecho civil francés y el de Luisiana. *Ardoin v. Hartford Acc. and Indem. Co.* 360 So.2d 1331, (1978). Cuando se trata de enmiendas legislativas que son genuinamente interpretativas de la legislación anterior, el efecto de la nueva ley es retroactivo a la ley anterior interpretada. L. Diez-Picazo y A. Gullón, *op. cit.* Sin embargo, cuando se trata de una nueva ley que es meramente

interpretativa de una legislación anterior y cuando se trata en realidad de una nueva enmienda que crea un nuevo derecho, no siempre resulta evidente a nuestros ojos. Como se apunta en *Pierce v. Hobart, supra,* la línea entre una y otra disposición puede ser tenue y no siempre aparece clara. ▇

Pero la distinción es determinante para propósitos del efecto retroactivo de la disposición. El sistema de derecho civil consagra el principio general de la irretroactividad de las leyes a menos que éstas expresamente dispongan lo contrario y sujeto a que no se afecten derechos adquiridos bajo la legislación anterior. Artículo 3, Código Civil de Puerto Rico, 1930. ▇ Este principio general está sujeto a ciertas excepciones dada la naturaleza de la legislación posterior envuelta. L. Diez-Picazo y A. Gullón, nos señalan importantes excepciones están las enmiendas interpretativas.

*"La doctrina y la jurisprudencia nos enseñan, sin embargo, que existen casos en los cuales la retroactividad de la nueva ley viene impuesta de una manera tácita. ¿Cuáles son estos casos de retroactividad tácita de la ley nueva? Los más importantes son los siguientes: 1) las normas meramente interpretativas de una disposición anterior son tácitamente retroactivas, en el sentido de que se aplican, no sólo a partir del momento en que son dictadas, sino desde el momento en que se dictó la ley o disposición por ellas interpretadas."* ▇

Véase además *Ginés v. Ayala, supra*, opinión disidente señor Belaval y los tratadistas allí citados.

Bajo el derecho civil de Luisiana se ha resumido la cuestión de la siguiente manera:

"This general principle of non-retroactivity of laws is stated in Article 8 of the Civil Code, which provides:

*"A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts." According to civilian theory, however, the principle of non-retroactivity of existing legislation admits three exceptions: laws that suppress or lessen penalties, laws that are merely interpretive of existing legislation, and those that the legislature has expressly or impliedly declared to be retroactive. 1 M. Planiol, Civil Law Treatise, Nos. 249-252 (La. St. L. Inst. Transl. 1959); A.Yiannopoulus, Civil Law System, 68 (1977).*

*The exception relating the interpretative laws has been explained by Professor Yiannopoulus as follows:*

*\* \* \* The exception... is justified on the ground that these laws do not establish new rules; they merely determine the meaning of existing laws and may thus be applied to facts ocurring prior to their promulgation. In these circumstances, there is an apparent rather than real retroactivity, because it is the original rather than the interpretive law that establishes rights and duties. \* \* \**

*Yiannopoulus, supra, at p. 68.*

*"This Court has recognized that interpretative legislation cannot properly be said to divest vested rights, because, under civilian theory, such legislation does not violate the principle of non-retroactivity. Legislation does not create new rules, but merely establishes the meaning that the interpreted statute had from the time of its enactment. It is the original statute, not the interpretive one, that establishes rights and duties. Gulf Oil Corporation v. State Mineral Board et al.. 317 So.2d 576 (La.1974); 1 M. Planiol, Treatise on the Civil Law, § 251 at 179 (La. State L. Ins. Transl. 1959); cf. Green v. Liberty Mutual, 352 So.2d 366 (La.App. 4th Cir. 1977)." Ardoin v. Bartford Acc. & Indem. Co. supra*, págs. 1338-1339.

A tenor con los anteriores principios, es que debemos evaluar si la Ley Número 41 del 17 de agosto de 1990 es una ley interpretativa del Artículo 14 de la Ley Número 379 como existía desde 1974 o se trata de una enmienda que creó nuevos derechos sustantivos en cuyo caso su efecto sólo puede ser de índole prospectiva.

A los fines de tal evaluación, partimos de las propias normas que el Código Civil nos dicta en nuestra función de aplicar las leyes a los casos concretos que ante sí tienen los tribunales para

resolver. Es un principio cardinal establecido en el Artículo 13 del Código Civil que:

*"Cuando la ley es clara, libre de toda ambiguedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu."* █

El Artículo 15█ del Código Civil dispone, además, que *"las palabras de una ley deben ser generalmente entendidas en su uso más corriente y usual significación, sin atender demasiado al rigor de las reglas gramaticales, sino al uso general y popular de las voces"*. Conforme a estos dictados, nuestro Tribunal Supremo ha resuelto que cuando la letra es clara un tribunal no está autorizado a rebuscar propósitos legislativos para encontrar adiciones o limitaciones a la Ley que no existen del texto de la misma. *Román v. Superintendente de la Policía* 93 D.P.R. 685 (1966). Se ha resuelto también, que en la interpretación de estatutos existe menos libertad de interpretación que cuando están envueltos conceptos del derecho común. Véase *Hale v. Marsh* 808 F2d 616, 620 (1986). En *United States v. Ron Pair Enterprises* 489 U.S. 235, 242 (1989) el Tribunal Supremo de los Estados Unidos hizo claro que:

*"The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute civil procedure may result demonstratively at odds with the intention of its drafters."*

Estos cánones de interpretación son aplicables en general. Por lo tanto, la facultad que tiene la Legislatura en un sistema de derecho civil como el nuestro, para mediante enmienda aclarar con efecto retroactivo el significado de sus leyes, está necesariamente limitado a aquellas situaciones en que la ley anterior ha adolecido de ambiguedad y confusión en cuanto a su contenido.

En Pierce v. Hobart, *supra,* █ se señalan ejemplos de lo que constituye bajo el sistema de derecho civil de Luisiana legislación posterior puramente interpretativa.

*"Comment (c) to Civil Code Article 6 cites two cases, Ardoin and Barron, as examples of interpretive legislation that should be applied retroactively. Barron reflects the situation where the Legislature amends a statute to provide its interpretation immediatly following an "incorrect" intepretation by the Louisiana Supreme Court. In Barron the Second Circuit addressed whether Acts 220 and 347 of 1979 which amended La.R.S. 32:1479 were interpretative in nature. These amendments directly overruled the construction given to La.R.S. 32:1479(1) a year earlier by the Louisiana Supreme Court in Smith v. State, 366 So.2d 1318 (La.1978). The Barron court stated that if the Legislature acts soon after a legislative "construction of a statute by the supreme court not coinciding with legislative intent," then the enactment is interpretive. Barron, 397 So.2d at 31 (citing Gulf Oil Corp. v. State Mineral Bd., 317 So.2d 576 (La.App.1974)). The Second Circuit concluded that the passage of Acts 220 and to overrule Smith "is a classic example of interpretive legislation which did not create a new rule but simply established the meaning that the interpreted statute, La.R.S. 32:1479, had from the time of its enactment..." Barron, 397, So.2d at 31.*

*Ardoin presents a different interpretive law scenario, one in which the Legislature defines and makes explicit that which was implicit in a statute. In Ardoin the court addressed the retroactivity of Act 897 of 1975 which further defined the standard of care owed by physicians under C.C. art. 2315. That Act stated that the standard of care for general physicians is to be determined by localized definitions of negligence and the standard of care for specialists is to be determined by those within the involved medical speciality. The amendment did not alter a courtcreated doctrine for at that time there was no "authoritative judicial interpretation of Louisiana statutory law pertinent to a physician's duty toward his patient." Ardoin, 350 So.2d at 1339. Though the Act "changed" the existing law by expressly defining the standard of negligence, the Louisiana Supreme Court found that his type of change was interpretive of the prior law:*

*Insofar as the statute describes a standard of conduct, it merely determines more precisely the meaning of certain kinds of fault by certain classes of defendants, i.e., professional negligence, imprudence and want of skill by medical generalists and specialists, who were originally responsible for the damage occasioned by such fault under Articles 2315 and 2316. Accordingly, La.R.S. 9:2794 is an interpretive statute which does not establish new rights and duties but merely determines the*

*meaning of existing laws..."*

*Ardoin,* 360 So.2d at 1339.

Ninguna de las situaciones mencionadas anteriormente se dan en el presente caso, y no podemos concluir que la Ley Número 41 del 17 de agosto de 1990 es meramente una ley interpretativa o aclaratoria del Artículo 14 de la Ley 378, según fue enmendado en 1974.

En primer lugar, del historial que hemos hecho de la evolución del derecho a la hora de tomar alimentos, no surge ninguna ambigüedad sobre la extensión de ese derecho. De hecho, a despecho de lo provisto en la sección 3 de la Ley Número 48 de 7 de agosto de 1935 en el sentido de que se debía fijar en un anuncio la hora de tomar alimentos de los trabajadores y que ésta no debía ser menos de una hora, nunca se consideró que implícitamente el trabajador tenía una causa de acción por habérsele negado dicho período de descanso. Fue necesaria la legislación aprobada en 1961 para crear el mismo. La Legislatura posteriormente tuvo amplia oportunidad de enmendar el Artículo 14 de la Ley 379. No lo hizo, sino hasta 1974 y sólo para limitar la discreción de los patronos para fijar la hora de tomar alimentos a cierto período dentro de la jornada regular. Sin embargo, la Legislatura no optó, en esa fecha, por ampliar el derecho que había creado en 1961 en cuanto a la hora de tomar alimentos dentro la jornada regular.

Luego de 1974, nunca se produjo una enmienda para establecer el derecho a una hora de tomar alimentos para la jornada extraordinaria, a pesar de que en 1985 se decretó por sentencia declaratoria en *Asociación de Industriales de Puerto Rico v. Héctor Hernández Soto y otros* ▮ que el Artículo 14 de la Ley 379 sólo proveía un sólo período de tomar alimentos. Esta acción fue incoada por la Asociación de Industriales contra el Secretario del Trabajo y Recursos Humanos, así como contra el Secretario de Justicia del Estado Libre Asociado de Puerto Rico. En esa época, el Secretario del Trabajo sostenía que existía el derecho a un segundo período en tomar alimentos. A pesar de la sentencia pretensión de estos funcionarios públicos, no se recurrió de tal determinación. Tampoco la Legislatura procedió a enmendar la ley con el fin de sentar su propia interpretación.

La inacción de la Legislatura ante la interpretación de los Tribunales de Instancia, derrotando la interpretación del principal funcionario ejecutivo del Estado Libre Asociado a cargo de velar por el cumplimiento de las leyes laborales, es evidencia contundente de que esta interpretación era conforme a lo expresado por la Legislatura en el Artículo 14.

No estamos ante una situación sobre la cual podemos responsablemente concluir que el derecho a la segunda hora de tomar alimentos estuviera implícita en la ley. Ni el lenguaje del estatuto, ni su historial nos llevan hacia la existencia implícita en la Ley de un segundo período. No hay más que examinar la Ley Número 41 del 17 de agosto de 1990 para darse cuenta que para crear ese segundo período se tuvo que legislar específicamente e inclusive conceder al Secretario poderes de reglamentación del mismo.

Es evidente que la Ley Número 41 lo que hizo fue crear un nuevo derecho de carácter sustantivo y una nueva obligación de los patronos para con los trabajadores. Pretender la Legislatura llevar a cabo tal enmienda sustantiva a la ley bajo el manto de su poder de llevar a cabo enmiendas interpretativas a sus leyes, facultad que le corresponde claramente en nuestro sistema de derecho civil, es llevar esa facultad a tal grado que obliteraría la limitación impuesta en nuestro Código Civil en su Artículo 3 a los efectos de que las leyes no tendrán un efecto retroactivo, si no dispusieren expresamente lo contrario. *Franceschini v. Ujaque Ortiz* **90 J.T.S. 88**, ___ D.P.R. ___ (1990). La Legislatura no ha derogado nunca dicho Artículo y hasta que así lo haga sus leyes están sujetas a esta norma general de legislación. Tampoco podemos concluir que el lenguaje utilizado en la exposición de motivos y la ley expresamente le dio efecto retroactivo a la Ley 41. El Artículo 2 que establece su vigencia, habla de una inmediata y no retroactiva. Además, no podemos interpretar tal lenguaje de manera que perjudique los derechos adquiridos bajo la legislación anterior y nos lleve a tener que enfrentarnos a problemas de índole constitucional relativos a la privación de la propiedad sin el debido proceso de ley. *Luce & Co. S & C v. Junta de Salario Mínimo de Puerto Rico,* 62 D.P.R. 452 (1943); *Vázquez v. Morales* 114 D.P.R. 822 (1983); *Landgraf v. USI Film Products,* 128 LEd 229 (1994).

Los recurridos en su comparecencia de mostración de causa hacen un vehemente esfuerzo por sostener la interpretación de la ley hecha por el juez recurrido. Argumentan que la letra de la Ley 223 del 23 de julio de 1974 es clara y expresa. Diferimos. Clara, en el sentido de crear períodos adicionales de tomar alimentos, es la Ley Número 41 del 17 de agosto de 1990 y con ello se le hace justicia a un crecido número de trabajadores que a veces venían obligados a trabajar una larga jornada de trabajo con un sólo período de tomar alimentos. Pero sostener que la Ley 223 es clara, en igual sentido que la Ley 41, choca contra la realidad de todo el desarrollo legislativo a que hemos hecho referencia especialmente a la necesidad que tuvo la Legislatura de aprobar nueva legislación a estos efectos. ¿Si era clara y expresa para qué se necesitaba la enmienda?

Los recurridos, también, sostienen que se trata de un estatuto remedial o reparador y, por lo tanto, debemos interpretarlo liberalmente. Si bien este principio de interpretación es correcto, no significa que los tribunales sustituyan su propio juicio y preferencias de lo que debe contener una ley por aquel expresado por el legislador. Como se señaló en *Hale v. Marsh supra*, a la pág. 621:

*"We know all about the canon of statutory construction that remedial statutes, such as the Civil Rights Act of 1964, should be construed liberally, but the canon can make the difference only in a close case, which we do not conceive this to be. Otherwise, "remedial" statutes would expand without limit."*

En aras de lograr un contenido más deseable en la ley, no se puede por *fiat* judicial llevar a cabo una tarea que es de la legislatura. Los tribunales hacen muy bien el limitarse a aplicar la ley e interpretar la misma a los hechos, sin pretender convertirse en legisladores no electos. El hecho de que alguna medida adicional deseada por algún tribunal contribuirá a adelantar todavía más los propósitos de la ley, no significa que la legislatura haya incorporado tal medida o que por interpretación judicial pueda incorporarse la misma.

Si el derecho de los empleados a más de un período de tomar alimentos no existe sino a partir de 1990, la responsabilidad recae sobre la legislatura, quien no articuló ese derecho mediante legislación hasta 1990. Esta responsabilidad la debe compartir, también, el Secretario del Trabajo y Recursos Humanos quien no consiguió, a pesar de que favorecía que dicho período adicional de tomar alimentos se convirtiera en una realidad. Hay que volver a recordar que su interpretación de que existía un período adicional fue desestimada mediante sentencia declaratoria en 1986, y que por razones que desconocemos ese fallo adverso a la pretensión del Secretario, no fue recurrido al Tribunal Supremo, procuró luego una enmienda a la ley.

Por último, sostienen los recurridos con igual vehemencia que la interpretación hecha por el Secretario del Trabajo y Recursos Humanos nos debe merecer gran deferencia y que si su interpretación del estatuto es una razonable debemos aceptar la misma. Nos citan en apoyo la decisión de *Chevron U.S.A. Inc. v. National Resources Council*, 104 Supreme Court 2778 (1984).

Aunque como norma general las interpretaciones que hacen los organismos encargados de administrar las leyes merecen deferencia, esa norma surge de la familiaridad y pericia del organismo producto de la administración continua de la ley. Esta norma no es tan abarcadora como pretende la representación legal de los recurridos. En realidad, el caso de *Chevron* citado por éstos en respaldo de su posición, no les sirve de apoyo. La norma de *Chevron* tiene su espacio pero no se extiende a una situación de hechos como la presente. Como muy bien se puntualizó en *Kelley v. A.P.A.* 15 F3d 1100, 1108-1109 (DC Cir. 1994):

*"In any event, the same reason that prevents the agency from issuing the rule as a substantive regulation precludes judicial deference to EPA's offered "interpretation." If Congress meant the judiciary, not EPA, to determine liability issues--and we believe Congress did--EPA's view of statutory liability may not be given deference. "A precondition to deference under Chevron is a congressional delegation of administrative authority." Adams Fruit Co. v. Barrett, 494 U.S. 638, 649, 110 S.Ct. 1384, 1390, los L.Ed.2d 585 (1990). Chevron, which sets forth the reigning rationale for judicial deference to agency interpretation of statutes, is premised on the notion that Congress implicitly delegated to the agency the authority to reconcile reasonably statutory ambiguities or to fill reasonable statutory interstices. Where Congress does not give an agency authority to determine*

*(usually formally) the interpretation of a statute in the first instance and instead gives the agency authority only to bring the question to a federal court as the "prosecutor," deference to the agency's interpretation is inappropriate. See, United States v. Western Elec. Co., 900 F.2d 283, 297 (D.C.Cir.1990). As we have explained, that is all that EPA can do regarding liability issues. Moreover, even if an agency enjoys authority to determine such a legal issue administratively, deference is withheld if a private party can bring the issue independently to federal court under a private right of action. See Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 197, 111 S.Ct. 2215, 2223, 115 L.Ed.2d 177 (1991) (citing Local Unión 1395 International Brotherhood of Elec. Workers v. NLRB 797 F.2d 1027, 1030-31 (D.C.Cir.1986)) (NLRB's interpretation of a collective bargaining agreement not entitled to deference since private parties can come to federal court independently to enforce those agreements). Petitioners are such private parties; they wish to preserve the right to sue lenders when, in petitioners view, a lender's behavior transgresses the statutory test--whether or not EPA would regard the lender as liable. As we read the statute, Congress intended that petitioners' claim in such and event should be evaluated by the federal courts independent of EPA's institutional view. (FN8)"*

En último análisis, son los tribunales con su compromiso de imparcialidad en la adjudicación de las controversias y no el funcionario ejecutivo que por ley debe adelantar y defender los intereses de los trabajadores los que en una situación como la presente deben tener y tienen la última palabra sobre la interpretación de la ley. Véase *Federal Election Comm'n. v. Democratic Senatorial Campaign Comm.* 454 U.S. 27, 32 (1981).

En suma, la Ley 41 del 17 de agosto de 1990 sólo tiene efectos prospectivos, no empece el intento de la Legislatura de, mediante interpretación de su legislación anterior, hacerla retroactiva a 1974. Procede, por lo tanto, revocar la resolución dictada y desestimar la causa de acción de los querellantes fundada en tal causa de acción en relación a cualquier período antes del 17 de agosto de 1990.

Regístrese y notifíquese.

Así lo acordó el tribunal y lo certifica la señora Secretaria General.

Sonia Pacheco Román
Secretaria General

**ESCOLIOS 96 DTA 52**

**1.** Hon. Reinaldo de León Martínez, Juez.

**2.** El caso quedó sometido a nuestra consideración el 7 de marzo, fecha en que fueron referidos por Secretaría dichos escritos.

**3.** 29 L.P.R.A.§283 429 L.P.R.A. §283

**4.** 29 L.P.R.A. §283

**5.** Ley Número 121 del 27 de junio de 1961.

**6.** Ley Número 223 de 23 de febrero de 1974.

**7.** Ley Número 41 del 17 de agosto de 1990.

**8.** El Secretario del Trabajo y Recursos Humanos estableció por reglamento que a los fines de determinar el momento durante la jornada regular y fuera de dichas jornadas en que se debe conceder a los trabajadores los períodos de tomar alimentos, se consideran todas las horas trabajadas dentro y fuera de la jornada regular. En el total de horas trabajadas, regulares o extraordinarias, el trabajador no podrá trabajar más de cinco horas consecutivas sin tener una pausa para tomar alimentos. Esta reglamentación desde luego está sujeta a la

disposición de ley de que cuando las horas extras son dos o menos se puede obviar el período adicional de tomar alimentos. Art. IV del Reglamento de 27 de agosto de 1990.

9. *Sistema de Derecho Civil*, 5ta. Ed., Madrid, Tecnos, Vol. I, pág. 128.

10. Página 1309.

11. 31 L.P.R.A. 3.

12. L. Diez-Picazo y A. Gullón, *op. cit.*, pág. 128.

13. 31 L.P.R.A. §13.

14. 31 L.P.R.A. §15.

15. Páginas 1309, 1310.

16. Civil 84-6314, Tribunal Superior de San Juan, Sentencia del Hon. Guillermo Arbona Lago, de 27 de junio de 1985.